No. 23-2110

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

———————————

DOLBY LABORATORIES LICENSING CORPORATION,

Appellant,

v.

UNIFIED PATENTS, LLC,

Appellee,

KATHERINE K. VIDAL, UNDER SECRETARY OF COMMERCE FOR
INTELLECTUAL PROPERTY AND DIRECTOR OF THE UNITED STATES
PATENT AND TRADEMARK OFFICE,

Intervenor.

———————————

Appeal from the United States Patent and Trademark Office,
Patent Trial and Appeal Board in No. 2021-00275.

———————————

## BRIEF FOR INTERVENOR

———————————

*Of Counsel:*

FARHEENA Y. RASHEED
  *Acting Solicitor*

PETER J. AYERS
  *Senior Counsel for Patent Law and
  Litigation*

MICHAEL S. FORMAN
  *Associate Solicitor*
  *Office of the Solicitor*
  *U.S. Patent and Trademark Office*
  *Mail Stop 8, P.O. Box 1450*
  *Alexandria, VA 22313*
  *(571) 272-9035*

BRIAN M. BOYNTON
  *Principal Deputy Assistant Attorney
  General*

JOSHUA M. SALZMAN
KEVIN J. KENNEDY
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7234*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 514-4214*

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................ 1

STATEMENT OF JURISDICTION ................................................................... 1

STATEMENT OF THE ISSUEs .......................................................................... 2

STATEMENT OF THE CASE ........................................................................... 2

    A.    Statutory Background ............................................................... 2

    B.    Factual And Procedural History .............................................. 6

SUMMARY OF ARGUMENT ........................................................................... 8

ARGUMENT ...................................................................................................... 11

I.    Standard Of Review .............................................................................. 11

II.    Dolby Lacks Standing To Challenge The Board's Decision Upholding
Its Patent Claims .................................................................................. 11

    A.    Dolby Bears The Burden Of Establishing Article III Standing ............. 11

    B.    Dolby Has Not Established An Injury In Fact ....................................... 13

    C.    The AIA Does Not Relax Article III Requirements Or Otherwise
Confer Standing ................................................................................... 21

III.    Section 314(d) Precludes Judicial Review Of Dolby's Challenges To The
Board's Real-Party-In-Interest Determination ...................................... 23

    A.    The AIA Precludes Judicial Review Of Institution-Related
Decisions ............................................................................................. 23

    B.    Section 314(d) Precludes Review Of Dolby's Challenges, Which
Are Premised Upon A Provision That Governs Only The Board's
Institution Decision ............................................................................. 24

IV.    Dolby's Challenges Fail On The Merits ................................................ 30

A.    Dolby's Challenge To The Board's Final Written Decision Is
      Without Merit .......................................................................... 30

B.    The Director Properly Designated *SharkNinja* As Precedential
      Without Notice And Comment .............................................. 35

CONCLUSION ............................................................................. 43

CERTIFICATE OF COMPLIANCE

ADDENDUM

# TABLE OF AUTHORITIES

**Cases:** **Page(s)**

*Advanced Bionics, LLC v. MED-EL Med-El Elektromedizinische Geräte GmbH,*
No. IPR2019-01469, 2020 WL 740292 (P.T.A.B. Feb. 13, 2020) ........................ 13

*American Fed'n of Labor & Cong. of Indus. Orgs. v. NLRB,*
57 F.4th 1023 (D.C. Cir. 2023) ............................................. 36, 38

*American Tort Reform Ass'n v. Occupational Safety & Health Admin.,*
738 F.3d 387 (D.C. Cir. 2013) ................................... 39

*Apple Inc. v. Vidal,*
63 F.4th 1 (Fed. Cir. 2023) ........................................ 28

*Applications in Internet Time, LLC v. RPX Corp.,*
897 F.3d 1336 (Fed. Cir. 2018) ................................ 34, 35

*Arizonans for Official English v. Arizona,*
520 U.S. 43 (1997) .................................................. 12

*Arpaio v. Obama,*
797 F.3d 11 (D.C. Cir. 2015) ............................... 13, 20

*ASARCO, Inc. v. Secretary of Labor,*
206 F.3d 720 (6th Cir. 2000) .............................. 16

*Atlanta Gas Light Co. v. Bennett Regulator Guards, Inc.,*
33 F.4th 1348 (Fed. Cir. 2022) ........................... 32, 39

*AVX Corp. v. Presidio Components, Inc.,*
923 F.3d 1357 (Fed. Cir. 2019) .................... 17, 18, 22

*Bank of Am. Corp. v. City of Miami,*
581 U.S. 189 (2017) ............................................. 22

*Belkin Int'l, Inc. v. Kappos,*
696 F.3d 1379 (Fed. Cir. 2012) ......................... 11

*Camreta v. Greene,*
563 U.S. 692 (2011) ........................................... 15

*Chestek PLLC, In re,*
92 F.4th 1105 (Fed. Cir. 2024) ......................... 37

*Chrysler Corp. v. Brown,*
    441 U.S. 281 (1979) ................................................................ 36

*Clapper v. Amnesty Int'l USA,*
    568 U.S. 398 (2013) ................................................................ 19

*Coalition for Common Sense in Gov't Procurement v. Secretary of Veterans Affairs.,*
    464 F.3d 1306 (Fed. Cir. 2006) ............................................... 40

*Consumer Watchdog v. Wisconsin Alumni Research Found.,*
    753 F.3d 1258 (Fed. Cir. 2014) ............................................... 18

*Credit Acceptance Corp. v. Westlake Servs.,*
    859 F.3d 1044 (Fed. Cir. 2017) ............................................... 30

*Cuozzo Speed Techs., LLC v. Lee,*
    579 U.S. 261 (2016) ............................................... 3, 4, 24, 25, 26

*Environmental't Prot. Info. Ctr., Inc. v. Pacific Lumber Co.,*
    257 F.3d 1071 (9th Cir. 2001) ................................................. 16

*ESIP Series 2, LLC v. Puzhen Life USA, LLC,*
    958 F.3d 1378 (Fed. Cir. 2020) ............................... 9, 16, 24, 26

*Facebook, Inc. v. Windy City Innovations, LLC,*
    973 F.3d 1321 (Fed. Cir. 2020) ............................................... 29

*Food & Water Watch, Inc. v. Vilsack,*
    808 F.3d 905 (D.C. Cir. 2015) ................................................. 12

*Fuji Photo Film Co., Ltd. v. International Trade Comm'n,*
    474 F.3d 1281 (Fed. Cir. 2007) ............................................... 15

*Havens Realty Corp. v. Coleman,*
    455 U.S. 363 (1982) ................................................................ 16

*Hollingsworth v. Perry,*
    570 U.S. 693 (2013) ................................................................ 11

*Intel Corp. v. Vidal,* No. 23-135,
    2024 WL 71916 (U.S. Jan. 8, 2024) ....................................... 28

*Intuitive Surgical, Inc. v. Ethicon LLC,*
    25 F.4th 1035 (Fed. Cir. 2022) ......................................... 29, 30

*IOENGINE, LLC v. PayPal Holdings, Inc.,*
   607 F. Supp. 3d 464 (D. Del. 2022) ......................................................... 40

*JEM Broad. Co. v. FCC,*
   22 F.3d 320 (D.C. Cir. 1994) ............................................................ 37, 38

*JTEKT Corp. v. GKN Auto. LTD.,*
   898 F.3d 1217 (Fed. Cir. 2018) ................................................................ 22

*Lincoln v. Vigil,*
   508 U.S. 182 (1993) ................................................................................. 36

*Lujan v. Defenders of Wildlife,*
   504 U.S. 555 (1992) .......................................................... 11, 12, 13, 21, 23

*Mathias v. WorldCom Techs., Inc.,*
   535 U.S. 682 (2002) ................................................................................. 14

*Mendoza v. Perez,*
   754 F.3d 1002 (D.C. Cir. 2014) ......................................................... 38, 39

*Military-Veterans Advocacy v. Secretary of Veterans Affairs,*
   7 F.4th 1110 (Fed. Cir. 2021) ................................................................. 17

*New York Tel. Co. v. Maltbie,*
   291 U.S. 645 (1934) ................................................................................. 15

*PDR Network, LLC v. Carlton & Harris Chiropractic, Inc.,*
   139 S. Ct. 2051 (2019) ............................................................................ 36

*Phigenix, Inc. v. Immunogen, Inc.,*
   845 F.3d 1168 (Fed. Cir. 2017) ............................................. 11, 12, 14, 18

*Platte River Whooping Crane Critical Habitat Maint. Tr. v. FERC,*
   962 F.2d 27 (D.C. Cir. 1992) .................................................................. 19

*Raines v. Byrd,*
   521 U.S. 811 (1997) ................................................................................. 22

*SAS Inst., Inc. v. Iancu,*
   138 S. Ct. 1348 (2018) ............................................................................ 29

*Sea-Land Serv., Inc. v. Department of Transp.,*
   137 F.3d 640 (D.C. Cir. 1998) ................................................................ 15

*SharkNinja Operating LLC v. IriRobot Corp.oration*, No. IPR2020-00734,
    2020 WL 5938681 (P.T.A.B. Oct. 6, 2020) .................................... 5, 6, 21, 26, 33, 35,
                                                                            37, 38, 39, 41, 42

*Sierra Club v. EPA*,
    292 F.3d 895 (D.C. Cir. 2002) ................................................................... 12

*SIPCO, LLC v. Emerson Elec. Co.*,
    980 F.3d 865 (Fed. Cir. 2020) ....................................................... 24, 26-27

*St. Jude Med., Cardiology Div., Inc. v. Volcano Corp.*,
    749 F.3d 1373 (Fed. Cir. 2014) ................................................................ 23

*Stupp Corp. v. United States*,
    5 F.4th 1341 (Fed. Cir. 2021) ................................................................... 36

*Summers v. Earth Island Inst.*,
    555 U.S. 488 (2009) ................................................................... 12, 17, 21

*Thryv, Inc. v. Click-To-Call Techs., LP*,
    590 U.S. 45 (2020) ........................................... 9, 24, 25-26, 26, 27, 29, 31

*TransUnion LLC v. Ramirez*,
    594 U.S. 413 (2021) ................................................................................ 16

*Unified Patents, LLC v. MemoryWeb, LLC*, No. IPR2021-01413,
    Paper 76 (on Direct Review, P.T.A.B. May 22, 2023) ....................... 32, 33

*Uniloc 2017 LLC v. Facebook, Inc.*,
    989 F.3d 1018 (Fed. Cir. 2021) .......................................................... 29, 30

*Ventex Co. v. Columbia Sportswear N. Am., Inc.*, No. IPR2017-00651,
    Paper 148 (P.T.A.B. Jan. 24, 2019)............................................................ 6

*Whitmore v. Arkansas*,
    495 U.S. 149 (1990) ................................................................................ 19

*Worlds Inc. v. Bungie, Inc.*,
    903 F.3d 1237 (Fed. Cir. 2018) .......................................................... 34, 35

**U.S. Constitution:**

Art. III, § 2, cl. 1 .......................................................................................... 11

**Statutes:**

Administrative Procedure Act (APA):

    5 U.S.C. § 553(b) ................................................................ 10, 36, 38, 41

Patent Act of 1952:

    35 U.S.C. § 1 *et seq.* ............................................................ 2
    35 U.S.C. § 3(a)(2) .............................................................. 5
    35 U.S.C. § 3(a)(2)(A) ......................................................... 11, 35, 38, 40
    35 U.S.C. § 6 ..................................................................... 4
    35 U.S.C. § 131 .................................................................. 2
    35 U.S.C. § 141 .................................................................. 22
    35 U.S.C. § 142 .................................................................. 1
    35 U.S.C. § 311 .................................................................. 3
    35 U.S.C. § 312(a) .............................................................. 8
    35 U.S.C. § 312(a)(2) .......................................... 2, 5, 23, 24, 31, 32
    35 U.S.C. § 312(a)(2)-(3) ..................................................... 3
    35 U.S.C. § 312(a)(3) .......................................................... 25
    35 U.S.C. § 314 .................................................................. 3
    35 U.S.C. § 314(a) .............................................................. 3, 37, 40
    35 U.S.C. § 314(b) .............................................................. 34
    35 U.S.C. § 314(d) .......................................... 2, 4, 9, 23, 24, 26
    35 U.S.C. § 315 .................................................................. 7
    35 U.S.C. § 315(a)(1) ........................................................... 4
    35 U.S.C. § 315(b) .............................................................. 4, 32
    35 U.S.C. § 315(e) .............................................................. 8, 14, 15, 30, 33
    35 U.S.C. § 315(e)(1)-(2) ...................................................... 4
    35 U.S.C. § 316 .................................................................. 4
    35 U.S.C. § 316(a) .............................................................. 41
    35 U.S.C. § 316(a)(4) ........................................................... 10, 40
    35 U.S.C. § 316(a)(11) .......................................................... 4, 34
    35 U.S.C. § 316(b) .............................................................. 33
    35 U.S.C. § 318 .................................................................. 23
    35 U.S.C. § 318(a) .............................................................. 4, 5, 31
    35 U.S.C. § 319 .................................................................. 2, 5, 22, 23
    35 U.S.C. § 325(d) .............................................................. 13

28 U.S.C. § 1295(a)(4)(A) ........................................................ 2

**Regulations:**

37 C.F.R. § 11.18(b)(2) ............................................... 32

37 C.F.R. §§ 42.1-42.80 ............................................. 41

37 C.F.R. § 42.4(a) ................................................. 5, 37

37 C.F.R. § 42.11(a) ............................................ 32, 39, 42

37 C.F.R. § 42.11(c) ................................................ 32

37 C.F.R. § 42.11(d) ................................................ 39

37 C.F.R. § 90.3(a) .................................................. 1

**Legislative Material:**

H.R. Rep. No. 112-98, pt. 1 (2011) ............................. 3, 34

**Other Authorities:**

Patent Trial & Appeal Bd., *Standard Operating Procedure 2 (Revision 11)*
(July 24, 2023), https://perma.cc/M9FM-9HR7 ................... 5, 38

U.S. Office of Gov't Ethics, *OGE Form 201: Request an Individual's
Ethics Documents* (May 31, 2023), https://perma.cc/6G7C-5PR8 ....... 20-21

USPTO, *Alphabetical Listing of Precedential Decisions*,
https://perma.cc/UQN2-KQXK ....................................... 6

USPTO, *Organizational Structure and Administration of the Patent Trial
and Appeal Board*, https://perma.cc/J2FX-DAHB...................... 5

15A Charles Alan Wright et al., *Federal Practice and Procedure*, § 3902
(3d ed.), Westlaw (database updated Apr. 2023) ....................... 12

## STATEMENT OF RELATED CASES

The government is not aware of any related cases within the meaning of

Federal Circuit Rule 47.5(b).

## INTRODUCTION

Appellee Unified Patents petitioned for inter partes review of certain patent claims owned by Appellant Dolby. The Patent Trial and Appeal Board (Board) instituted review, declining to resolve a dispute between Dolby and Unified Patents over whether nine entities identified by Dolby qualified as real parties in interest. The Board explained that such a determination would be unnecessary given the absence of any allegation or evidence that any of these entities could trigger a statutory bar to institution. In so doing, the Board followed the United States Patent and Trademark Office's (USPTO) current practice of adjudicating real-party-in-interest issues only when they are material to the proceeding or there is evidence of misconduct, which avoids unnecessary and costly delays and potentially prejudicial adjudication of the rights of absent parties.

The Board subsequently issued a final written decision finding that Unified Patents failed to meet its burden to show that any of the challenged claims were unpatentable, thus leaving Dolby's patent claims intact. Despite Dolby's successful defense of its patent claims, it has now appealed to challenge the Board's approach to handling real-party-in-interest disputes under 35 U.S.C. § 312(a)(2).

## STATEMENT OF JURISDICTION

The Board issued its final written decision on June 15, 2022, Appx1, and its order denying rehearing on April 27, 2023, Appx38. Dolby filed a timely notice of appeal on June 29, 2022. Dkt. 1; *see* 35 U.S.C. § 142; 37 C.F.R. § 90.3(a). Dolby

invokes this Court's jurisdiction under 35 U.S.C. § 319 and 28 U.S.C. § 1295(a)(4)(A).

Dolby's Article III standing is contested.

## STATEMENT OF THE ISSUES

1. Whether Dolby has standing to challenge the Board's final written decision when the Board did not find any claims unpatentable.

2. Whether 35 U.S.C. § 314(d) precludes judicial review of the USPTO's decision regarding Unified Patents' compliance with 35 U.S.C. § 312(a)(2)'s requirement that petitioners identify all real parties in interest in a petition to institute inter partes review.

3. Whether the America Invents Act (AIA) requires the USPTO to adjudicate all disputes regarding the identities of real parties in interest to an inter partes review petition even when such disputes are irrelevant to the agency's statutory authority to institute and conduct the inter partes review in question.

4. Whether the Administrative Procedure Act (APA) requires the USPTO to engage in notice-and-comment rulemaking in order to instruct the Board on how to exercise the Director's delegated institution authority in adjudicating such disputes.

## STATEMENT OF THE CASE

### A.    Statutory Background

1. The Patent Act of 1952 (Patent Act), 35 U.S.C. § 1 *et seq.*, charges the USPTO with examining applications for patents and directs the USPTO to issue a patent if the statutory criteria are satisfied. *Id.* § 131. Federal law has long permitted

the USPTO to reconsider the patentability of inventions claimed in previously issued patents. In the AIA, Congress substantially expanded those procedures in an effort to "establish a more efficient and streamlined patent system." H.R. Rep. No. 112-98, pt. 1, at 40 (2011). Among other changes, the AIA established inter partes review, which "allows a third party to ask the [USPTO] to reexamine the claims in an already-issued patent and to cancel any claim that the agency finds to be unpatentable in light of prior art." *Cuozzo Speed Techs., LLC v. Lee*, 579 U.S. 261, 265 (2016); *see* 35 U.S.C. § 311.

When a petition for review is filed, the USPTO Director first must determine whether to institute review. 35 U.S.C. § 314. The statute does not require the Director to institute review in any circumstance. *See Cuozzo*, 579 U.S. at 273. The AIA identifies certain circumstances, however, in which the agency may not institute review. The Director may not, for instance, "consider[]" a petition to institute inter partes review unless the petition, among other things, "identifies all real parties in interest" and "identifies, in writing and with particularity, each claim challenged." 35 U.S.C. § 312(a)(2)-(3). The Director may not institute inter partes review unless "there is a reasonable likelihood that the petitioner would prevail with respect to at least 1 of the claims challenged in the petition." *Id.* § 314(a). Inter partes review also "may not be instituted" if (1) "before the date on which the petition for such a review is filed, the petitioner or real party in interest filed a civil action challenging the validity of a claim of the patent"; or (2) "the petition requesting the proceeding is filed more

3

than 1 year after the date on which the petitioner, real party in interest, or privy of the petitioner is served with a complaint alleging infringement of the patent." *Id.* § 315(a)(1), (b).

The USPTO's institution decisions are not subject to judicial review. The AIA declares that the Director's determination whether to institute review is "final and nonappealable." 35 U.S.C. § 314(d). The Supreme Court has explained that this provision precludes any challenges to the Director's institution decision under § 314(a) as well as any instances "where a patent holder grounds its claim in a statute closely related to [the] decision to institute inter partes review." *Cuozzo*, 579 U.S. at 275-76.

If the Director institutes an inter partes review proceeding, the Board conducts a trial on the patentability of the challenged claims. *See* 35 U.S.C. §§ 6, 316. Generally, the Board must issue a final written decision on the claims within one year after institution of the proceeding. *See id.* § 316(a)(11); *see also Cuozzo*, 579 U.S. at 268. Where the Board issues a final written decision on patentability, the petitioner, the petitioner's privies, and any real parties in interest are thereafter estopped from raising an invalidity challenge before the USPTO or in district court on any ground that reasonably could have been asserted during inter partes review. *See* 35 U.S.C. § 315(e)(1)-(2). Unlike the threshold institution decision, final written decisions affect the substantive legal rights of the parties to the inter partes review because they include an unpatentability determination and trigger estoppel effects. *Id.* § 318(a).

4

The statute provides that "[a] party dissatisfied with" the Board's final written decision in an inter partes review "may appeal" the Board's final written decision on patentability to this Court.  35 U.S.C. §§ 318(a), 319.  "Any party to the inter partes review shall have the right to be a party to the appeal."  *Id.* § 319.

2.  The Director has delegated to the Board her discretionary authority to determine whether to institute inter partes review proceedings.  37 C.F.R. § 42.4(a).  The Director is "responsible for providing policy direction and management supervision for the Office," 35 U.S.C. § 3(a)(2), and does so in various ways, including by publishing guidance materials and issuing memoranda on the handling of recurring issues before the more than 200 administrative patent judges of the Board, *see* USPTO, *Organizational Structure and Administration of the Patent Trial and Appeal Board*, https://perma.cc/J2FX-DAHB.  Most relevant here, the Director also issues guidance to the Board on how to exercise the Director's discretion by designating particular Board opinions as precedential, thus making those opinions "binding Board authority in subsequent matters involving similar facts or issues."  Patent Trial & Appeal Bd., *Standard Operating Procedure 2 (Revision 11)*, at 7 (July 24, 2023), https://perma.cc/M9FM-9HR7.

Relevant here is a 2020 Board decision that the then-Director designated as precedential:  *SharkNinja Operating LLC v. iRobot Corp.*, No. IPR2020-00734, 2020 WL 5938681 (P.T.A.B. Oct. 6, 2020), in which the patent owner argued that the Board should deny institution under 35 U.S.C. § 312(a)(2) because, according to the patent

owner, "the Petition d[id] not name all real parties in interest." *Id.* at *7; *see* USPTO, *Alphabetical Listing of Precedential Decisions*, https://perma.cc/UQN2-KQXK. The petitioner, for its part, maintained that "the Petition correctly name[d] all [real parties in interest]." *SharkNinja*, 2020 WL 5938681, at *7. The Board concluded that, in the circumstances of that case, it did not need to resolve that "highly fact-dependent question" prior to institution. *Id.* (quoting *Ventex Co. v. Columbia Sportswear N. Am., Inc.*, No. IPR2017-00651, Paper 148, at 6 (P.T.A.B. Jan. 24, 2019) (precedential)). The Board explained that, even if the patent owner's position were confirmed, the additional real party in interest "would not create a time bar or estoppel under 35 U.S.C. § 315." *Id.*; *see also id.* at *8 (describing situation as one where "no allegation that the failure to name the purported [real parties in interest] results in time bar, estoppel, or anything else material to the case"). The Board's decision, moreover, was supported by past practice: it had previously declined to conduct the "lengthy exercise" of identifying possible additional real parties in interest where it was "unnecessary for the purposes of rendering a decision on institution of trial." *Id.* That approach, the Board reasoned, "better serves the interest of cost and efficiency." *Id.*

## B.    Factual And Procedural History

Appellant Dolby owns U.S. Patent Number 10,237,577 B2 ('577 patent), which "relates to video encoding and decoding." Appx6. Appellee Unified Patents petitioned for inter partes review of this patent, identifying itself as the sole party in

interest. Appx1, Appx3. Dolby, for its part, contended that nine other entities were real parties in interest to the petition. Appx3. Dolby further argued that, under § 312(a)(2), institution of inter partes review should be denied because the petition failed to identify all real parties in interest. Appx3.

In June 2017, exercising the Director's delegated authority, the Board instituted inter partes review of the '577 patent. Appx2. In resolving the disagreement over real parties in interest, the Board followed its precedential decision in *SharkNinja*. As in that case, "there was no indication that time bar or estoppel provisions under 35 U.S.C. § 315 would be implicated or that any omission [of alleged real parties in interest] would be material to the case at the institution stage," thus the Board "declined to decide" whether the entities identified by Dolby qualified as real parties in interest. Appx3-4 (citing decision on institution).

The parties proceeded to the trial phase. Dolby renewed its arguments related to the real-party-in-interest issue, contending that the Board may not resolve the petition without resolving the parties' dispute, or that the Board should "at least" name the identified entities as real parties in interest. Patent Owner Resp. 17, 21, 37, Paper 53, No. IPR2021-00275. The Board reiterated its institution-related finding that it was unnecessary for purposes of this inter partes review to look beyond Unified Patents' identification of real parties in interest. Appx4. On the merits, the Board found that Unified Patents had not succeeded in demonstrating that any of the challenged claims were unpatentable. Appx33. Thus, Dolby's patent claims were left

7

intact by the Board's final decision.  Following its successful defense of its patent

claims, Dolby filed a notice of appeal.  Dkt. 1.

## SUMMARY OF ARGUMENT

I.  After prevailing in an inter partes review and thus preserving all of its

challenged patent claims, Dolby here attempts to appeal the Board decision in its

favor.  But Dolby lacks Article III standing to seek judicial review of an administrative

decision that does not injure it.  Dolby bases its appeal on its dissatisfaction with the

Board's application of 35 U.S.C. § 312(a)(2), which requires that a petitioner identify

all real parties in interest before the USPTO considers instituting an inter partes

review.  The Board found it unnecessary to resolve Dolby's disputed allegation that

nine additional entities qualify as real parties in interest based on the Board's

uncontested assessment that this dispute was irrelevant to the agency's authority to

institute and conduct this proceeding.

Dolby asserts it will in the future suffer various harms due to this aspect of the

Board's decision, but none of its contentions render inapplicable the usual rule that a

prevailing party may not appeal its victory simply because it disagrees with some part

of a tribunal's reasoning or findings.  Dolby is free to litigate the real-party-in-interest

question in any future case involving any of the unnamed entities; Dolby has no

stand-alone informational injury under any statute; and Dolby resorts to sheer

speculation when hypothesizing various future scenarios in which it would be

disadvantaged due to its lack of certainty over which parties qualify here as real parties

in interest and who thus may—or may not—be estopped going forward under 35 U.S.C. § 315(e). Nor can Dolby rely on the AIA's provision permitting dissatisfied parties to an inter partes review to appeal the Board's decision; this Court has already squarely rejected Dolby's suggestion that this statute alters Article III's standing requirements. This Court should thus dismiss this appeal for lack of standing.

II. Even apart from Dolby's failure to carry its burden to establish any sort of constitutionally cognizable injury due to the Board's affirmance of its patent claims, a separate threshold barrier bars Dolby's attempt to challenge the Board's implementation of § 312(a)(2). In 35 U.S.C. § 314(d), Congress barred judicial review of the USPTO's decisions to institute an inter partes review. As this Court has already held, a "contention that the Board failed to comply with § 312(a)(2) is 'a contention that the agency should have refused to institute an inter partes review,'" and thus "§ 314(d) precludes [judicial] review of that determination." *ESIP Series 2, LLC v. Puzhen Life USA, LLC*, 958 F.3d 1378, 1386 (Fed. Cir. 2020) (quoting *Thryv, Inc v. Click-To-Call Techs., LP*, 590 U.S. 45, 54 (2020)). Dolby's challenge to the Board's conduct in this inter partes review turns only on § 312(a)(2); its reliance on cases involving other provisions that this Court has concluded impose statutory requirements on the agency's post-institution conduct of an inter partes review—and thus fall outside § 314(d)—is therefore misplaced.

III. Finally, even if this Court could address Dolby's challenges on the merits, Dolby's arguments simply fail. The Board's approach to real-party-in-interest disputes

under § 312(a)(2) in this case, and in its precedential *SharkNinja* decision, is entirely

consistent with the statute. Where such disputes surface potential real parties in

interest whose presence could affect the agency's authority to institute inter partes

review by triggering the statute's time-bar or estoppel provisions, the Board resolves

those disputes. The Board, in its discretion, may also resolve real-party-in-interest

disputes where there is evidence of wrongdoing. But where the agency's authority to

institute would be unimpaired regardless of the outcome of such a dispute, the

Director and Board have sensibly declined to use agency resources during these fast-

paced trials to undertake the lengthy analysis often needed to make highly fact-

intensive determinations about real-party-in-interest status. In such circumstances,

nothing in the AIA precludes the agency from relying on a petitioner's list of all real

parties in interest and leaving the patent owner free to assert estoppel in a separate

proceeding where the suspected real party in interest is a party to the case and can

defend its interests.

Equally without merit is Dolby's insistence that the Director was obliged to use

notice-and-comment rulemaking to issue directions to the Board about how to

efficiently and consistently exercise the institution authority the Director has delegated

to it. Such instructions are procedural rules governing the USPTO's institution

operations, exempt from the APA's notice-and-comment requirements under 5

U.S.C. § 553(b), not substantive rules binding third parties or altering their legal rights.

Nor does 35 U.S.C. § 316(a)(4)'s authorization to issue regulations governing inter

partes review circumscribe the Director's authority to supervise and direct the

USPTO under 35 U.S.C. § 3(a)(2)(A) through any chosen mechanism, including

designation of Board decisions as precedential.

## ARGUMENT

### I.    Standard Of Review

This Court has "an obligation to assure [itself] of litigants' standing under

Article III of the Constitution, including when a party appeals from a final agency

action." *Phigenix, Inc. v. Immunogen, Inc.*, 845 F.3d 1168, 1171 (Fed. Cir. 2017) (citation

omitted) (quotation marks omitted).  Statutory interpretation is a question of law that

this Court reviews de novo.  *Belkin Int'l, Inc. v. Kappos*, 696 F.3d 1379, 1381 (Fed. Cir.

2012).

### II.    Dolby Lacks Standing To Challenge The Board's Decision Upholding Its Patent Claims

Dolby has not established that the Board's decision in its favor causes it a

concrete injury in fact.  Dolby accordingly lacks Article III standing to invoke this

Court's jurisdiction.

#### A.    Dolby Bears The Burden Of Establishing Article III Standing

The "[J]udicial Power" of the United States extends only to Article III "Cases"

and "Controversies."  U.S. Const. art. III, § 2, cl. 1.  The doctrine of Article III

standing serves as "an essential and unchanging part of the case-or-controversy

requirement," *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992), and a "person[]

11

seeking appellate review" must establish Article III standing in order to pursue the appeal, *Hollingsworth v. Perry*, 570 U.S. 693, 705 (2013) (quoting *Arizonans for Official English v. Arizona*, 520 U.S. 43, 64 (1997)). "[T]he irreducible constitutional minimum of standing contains three elements": (1) an injury in fact; (2) caused by the opposing party's conduct (or the order on appeal); and (3) redressable by a favorable decision. *Defenders*, 504 U.S. at 560-61; *see, e.g.*, 15A Charles Alan Wright et al., *Federal Practice and Procedure*, § 3902 (3d ed.), Westlaw (database updated Apr. 2023) (noting that in determining "standing to appeal … the focus shifts to injury caused by the judgment rather than injury caused by the underlying facts").

As the party invoking this Court's jurisdiction, Dolby "bears the burden of showing that [it] has standing." *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009). "[T]he summary judgment burden of production applies in cases where an appellant seeks review of a final agency action and its standing comes into doubt." *Phigenix*, 845 F.3d at 1172-73. Thus, Dolby "must either identify … record evidence sufficient to support its standing to seek review or, if there is none because standing was not an issue before the agency, submit additional evidence to the court of appeals," such as "by affidavit or other evidence." *Id.* at 1173 (alteration in original) (quoting *Sierra Club v. EPA*, 292 F.3d 895, 899 (D.C. Cir. 2002)).

Courts "do not assume the truth of legal conclusions, nor do [they] accept inferences that are unsupported by the facts" which have been properly demonstrated. *Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 913 (D.C. Cir. 2015)

12

(quoting *Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015)).  Thus, "'[w]hen considering any chain of allegations for standing purposes, [courts] may reject as overly speculative those links which are predictions of future events (especially future actions to be taken by third parties).'"  *Id.* (first alteration in original) (quoting *Arpaio*, 797 F.3d at 21).

## B.    Dolby Has Not Established An Injury In Fact

Dolby has not established the first element of Article III standing:  injury in fact.  To establish injury in fact, a party must show "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical."  *Defenders*, 504 U.S. at 560 (quotation marks omitted).  In many cases, that standard is easily met in the wake of an inter partes review:  a party whose patent claims have been canceled has a concrete injury that falls squarely within the ambit of Article III.  Dolby, however, *prevailed* in this inter partes review and has not suffered an injury of that sort.  Indeed, Dolby's patent rights have only been strengthened as a result of the Board's final decision finding the challenged claims not invalid.  *See* 35 U.S.C. § 325(d) ("In determining whether to institute … , the Director may take into account whether, and reject the petition or request because, the same or substantially the same prior art or arguments previously were presented to the Office."); *see also Advanced Bionics, LLC v. MED-EL Elektromedizinische Geräte GmbH*, No. IPR2019-01469, 2020 WL 740292 (P.T.A.B. Feb. 13, 2020) (precedential) (setting forth a two-part framework for evaluating § 325(d) issues).

In lieu of any patent-based injury, Dolby asserts that it has suffered a handful of other harms as a result of the Board's final written decision affirming its patent claims. Notably, Dolby has not supported any of its asserted injuries by way of "affidavit or other evidence," instead appearing to rely on statements in its brief to "substantiate its entitlement to judicial review." *Phigenix*, 845 F.3d at 1173 (quotation marks omitted). None of Dolby's purported injuries satisfies the constitutional minimum required for Article III standing.

1. Dolby contends (Br. 12-13) that the Board's decision visited an informational injury by depriving Dolby of a ruling regarding which of the entities it alleged are real parties in interest qualify as such, arguing (Br. 13-14) that this information may be useful in its future "interactions" in the "video and audio encoding ecosystem" and would afford it certainty regarding which parties would be estopped in the future under 35 U.S.C. § 315(e). But a prevailing party often does not win on every threshold determination—or necessarily even get a ruling on issues a tribunal considers unnecessary to reach to dispose of a matter—yet "[a]s a general rule, a party may not appeal from a favorable judgment simply to obtain review of findings it deems erroneous." *Mathias v. WorldCom Techs., Inc.*, 535 U.S. 682, 684 (2002) (per curiam) (dismissing a case where "petitioners were the prevailing parties below, and seek review of uncongenial findings not essential to the judgment and not binding upon them in future litigation"). A party may have standing to appeal from a favorable decision that nonetheless has a "prospective effect" that aggrieves them,

14

such as a constitutional ruling requiring a government official to alter their on-the-job

conduct. *Camreta v. Greene*, 563 U.S. 692, 702-703 (2011). But where the only

challenge is to "portions of [a] decree" that are not "res judicata in relation to" either

subsequent agency action or a future "judicial proceeding," the prevailing party lacks

standing to appeal. *New York Tel. Co. v. Maltbie*, 291 U.S. 645, 646 (1934) (per curiam);

*see Fuji Photo Film Co. v. International Trade Comm'n*, 474 F.3d 1281, 1290 (Fed. Cir.

2007) (citing *Maltbie* for the proposition that even "a stare decisis effect alone" of an

agency's order will not necessarily "confer standing to appeal"). Indeed, even

"precedential effect within an agency is not, alone, enough to create Article III

standing, no matter how foreseeable the future litigation." *Sea-Land Serv., Inc. v.

Department of Transp.*, 137 F.3d 640, 647-49 (D.C. Cir. 1998).

Here, Dolby is attempting to appeal an aspect of the Board's decision that does

not injure it. The Board conclusion Dolby challenges—that the parties' real-party-in-

interest dispute was unnecessary to resolve to properly institute the review or reach a

final written decision with respect to patentability—does not prevent Dolby from

arguing in any future USPTO or judicial proceeding that any of the nine identified

entities were in fact real parties in interest to this inter partes review and should thus

be estopped under 35 U.S.C. § 315(e). There is no res judicata effect of that Board

conclusion for either administrative or judicial proceedings that may occur in the

future, and the mere possibility that Dolby may "incur [costs] in repeating the

litigation of the … issue in the future," is not the type of "distinct and palpable injury"

15

that could support standing. *ASARCO, Inc. v. Secretary of Labor*, 206 F.3d 720, 723-24 (6th Cir. 2000) (quoting *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 372 (1982)); *see Environmental Prot. Info. Ctr., Inc. v. Pacific Lumber Co.*, 257 F.3d 1071, 1076 (9th Cir. 2001) (similar).

Indeed, far from injuring Dolby, the challenged portion of the Board's decision leaves Dolby better off than if the Board had simply found Dolby's allegations insufficient to establish that those entities Dolby named in fact qualify as real parties in interest; as Dolby appears to concede, had it simply lost on this issue, it could not appeal that determination. *See* Br. 10-11 (discussing *ESIP Series 2, LLC v. Puzhen Life USA, LLC*, 958 F.3d 1378, 1386 (Fed. Cir. 2020)); *see also infra* p. 18. And to the extent that Dolby suggests that it has suffered an "informational injury" stemming from an informational right created by statute, it errs. The AIA is not "a public-disclosure law" that might support standing by "entitl[ing] all members of the public to certain information," and Dolby does not argue otherwise. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 441, 442 (2021) (concluding that an "asserted informational injury that causes no adverse effects cannot satisfy Article III" (quotation marks omitted)); *see infra* pp. 32-33.

Moreover, even on their own terms, the asserted informational harms with which Dolby attempts to establish standing to challenge the Board's decision in its favor are far too speculative to satisfy Article III. Dolby's assertion (Br. 13) that its uncertainty regarding nine entities' real-party-in-interest status might hinder its ability

16

to discover breaches of unspecified "licensing agreements" is insufficient. This kind

of general allegation of future harm, which does not specify any exemplar contract,

company, or interaction, fails to satisfy Article III's strictures. *See Military-Veterans*

*Advocacy v. Secretary of Veterans Affairs*, 7 F.4th 1110, 1132 (Fed. Cir. 2021) (finding lack

of standing where plaintiff "fails to point to an example claim" or "allege any specific

facts" showing how the challenged rules would affect it); *Summers*, 555 U.S. at 495

(rejecting as inadequate an affidavit from a member of the plaintiff organization

generally asserting non-specific plans to visit forests affected by the challenged

action). Dolby's generalized descriptions fall equally short of the "sufficiently alleged

current or nonspeculative activities" that this Court has required to support claims of

harm "resulting from the Board's decision" in an inter partes review. *AVX Corp. v.*

*Presidio Components, Inc.*, 923 F.3d 1357, 1367 (Fed. Cir. 2019).

Similarly, even assuming an absence of a real-party-in-interest ruling could ever

constitute an Article III injury to a prevailing patent owner, Dolby has provided

nothing to support its contention (Br. 14) that this absence with respect to these nine

entities is likely to harm Dolby in the future. There is nothing in the record that

supports Dolby's speculation that any of these entities will try to bring a future

USPTO proceeding that Dolby believes should be foreclosed under § 315(e)(1)'s bar,

or any even bare allegation that Dolby intends to enforce the challenged patent

against these entities such that § 315(e)(2)'s bar would apply in a future judicial

proceeding.

17

Even where § 315(e)'s estoppel provision undoubtedly attached to a party after an inter partes review, this Court has demanded a showing of specific injury as a result of the estoppel provision in order to establish standing. *See Phigenix*, 845 F.3d at 1175-76 (concluding that § 315(e)'s "estoppel provision 'do[es] not constitute an injury in fact' when, as here, the appellant 'is not engaged in any activity that would give rise to a possible infringement suit'" (alteration in original) (quoting *Consumer Watchdog v. Wisconsin Alumni Research Found.*, 753 F.3d 1258, 1262 (Fed. Cir. 2014)). Here, where it remains unresolved whether § 315(e)'s estoppel provision applies to the parties in question, Dolby is even farther from making the requisite showing of injury than the appellants in *Phigenix* and *Consumer Watchdog*.

Even if Dolby had made any allegations bearing on the likelihood of future administrative or judicial proceedings, legal uncertainty regarding the effect of § 315(e) in the circumstances here further undermines Dolby's claim to standing based on its asserted need for estoppel-related certainty. This Court "has not decided" whether "§ 315(e) would have estoppel effect even where the [inter partes review] petitioner lacked Article III standing to appeal the Board's decision to this court." *AVX Corp.*, 923 F.3d at 1363. Here, even if the Board had concluded that the named entities were real parties in interest to this inter partes review, there is nothing in the record suggesting, let alone establishing, that they would have had standing to challenge the Board's decision with respect to patentability. Thus, even if there were any allegations regarding the likelihood of future proceeding by the named entities, it is far from

18

certain that Dolby could later assert estoppel against them. This legal uncertainty strongly reinforces the conclusion that Dolby's asserted harm is speculative here. *See Platte River Whooping Crane Critical Habitat Maint. Tr. v. FERC*, 962 F.2d 27, 35 (D.C. Cir. 1992) ("Allegations of injury based on predictions regarding future legal proceedings are[] … 'too speculative to invoke the jurisdiction of an Art[icle] III Court.'" (third alteration in original) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 157 (1990))).

2. For similar reasons, Dolby cannot demonstrate an Article III injury by hypothesizing (Br. 15) that had the Board resolved the real-party-in-interest dispute, Unified Patents might "never challenge another Dolby patent again." Like its fears of a future proceeding initiated by one of the alleged real parties in interest, this "injury" in the form of a lost benefit is based on Dolby's sheer speculation. Indeed, Dolby goes so far as to flip the burden of proof, contending (Br. 14) that "[t]here is no evidence or indication" that Unified Patents would continue to behave in the same manner under its desired rule. But the burden is Dolby's, and it has not met it through affidavits or other evidence.

That is especially so because Dolby's theory depends on injury resulting from the future actions of a party—Unified Patents—that will not be compelled to act by the relief Dolby seeks: a holding that the Board must invariably resolve all real-party-in-interest disputes. *Cf. Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 (2013) (expressing "reluctance to endorse standing theories that rest on speculation about the

decisions of independent actors"). Dolby's claim of how Unified Patents, which is already subject to § 315(e) estoppel on the adjudicated claims in this patent, would alter its behavior with respect to other Dolby patents in response to such a holding is an "allegation[] that [is] really [a] prediction[]" about a "chain" of future events with speculative "links." *Arpaio*, 797 F.3d at 21 (quotation marks omitted). Specifically, Dolby hypothesizes that: (1) the Board would agree with Dolby regarding the identified nine entities' status as real parties in interest, (2) that such a ruling would discourage Unified Patents from filing future inter partes review petitions (at least without relevant members' consent), and (3) that this discouragement would mean that Unified Patents would in particular refrain from ever filing a petition challenging a Dolby patent ever again. But the only support Dolby offers (Br. 14) is Unified Patents' CEO's statement that naming members as real parties in interest would be a departure from existing practice. That cannot substantiate Dolby's "predictions of future events" to show a "realistic danger" that the Board's decision causes it "a direct injury." *Arpaio*, 797 F.3d at 21 (quotation marks omitted).

3. Dolby also contends (Br. 13) that the Board's decision deprived it of "assurance that the Administrative Patent Judges assigned to the proceeding below did not have conflicts of interest" with the allegedly omitted real parties in interest. But the existence of such a conflict of interest is pure speculation, as Dolby does not identify any reason to think that such a conflict might exist, despite its ability to request the judges' financial disclosures once the case was empaneled. *See* U.S. Office

of Gov't Ethics, *OGE Form 201: Request an Individual's Ethics Documents* (May 31, 2023), https://perma.cc/6G7C-5PR8.  Furthermore, even assuming that Dolby had plausibly alleged the existence of a potential conflict, it is hard to understand how Dolby believes harm may have befallen it through a conflict here:  Dolby *prevailed* in the proceedings at issue, and does not seek to disturb the decision in its favor issued by the Board members Dolby suggests may have had a conflict.

4.  Finally, Dolby cannot cure its lack of standing by asserting (Br. 24) a procedural injury due to the Director's designation of the *SharkNinja Operating LLC v. iRobot Corp.*, No. IPR2020-00734, 2020 WL 5938681 (P.T.A.B. Oct. 6, 2020), decision as precedential rather than issuing directions through notice-and-comment rulemaking.  Under the procedural-injury doctrine, a plaintiff can show a cognizable injury if it has been deprived of "a procedural right to protect [its] concrete interests." *Defenders*, 504 U.S. at 573 n.7.  But "a procedural right without some concrete interest that is affected by the deprivation—a procedural right *in vacuo*—is insufficient to create Article III standing." *Summers*, 555 U.S. at 596.  Because Dolby has not identified a concrete interest that lies on the other side of its desired procedure, it cannot invoke this Court's jurisdiction.

### C.    The AIA Does Not Relax Article III Requirements Or Otherwise Confer Standing

In the alternative, Dolby contends (Br. 12) that "35 U.S.C. § 319 confers … standing to raise its challenge to the Board's decision." *See also* Br. 24.  Section 319

provides that "[a] party dissatisfied with the final written decision of the Patent Trial

and Appeal Board under section 318(a) may appeal the decision." 35 U.S.C. § 319.

Implicit in Dolby's contention is the premise that any party that disagrees with the

Board's decision is "dissatisfied" within the meaning of § 319, whether or not it

suffers an Article III injury.

This Court has repeatedly rejected the argument that "a statutory right to

appeal itself establishes [a party's] constitutional standing" under the AIA. *AVX

Corp.*, 923 F.3d at 1362 (citing 35 U.S.C. §§ 141, 319); *see JTEKT Corp. v. GKN Auto.

LTD.*, 898 F.3d 1217, 1219 (Fed. Cir. 2018) ("In a series of decisions, we have held

that the statute cannot be read to dispense with the Article III injury-in-fact

requirement for appeal to this court."). By specifying that any "dissatisfied" party may

appeal the final written decision of the Board, § 319 and § 141(c) suggest "a

congressional intention to define standing as broadly as is permitted by Article III," at

least with respect to parties to inter partes reviews, *Bank of Am. Corp. v. City of Miami*,

581 U.S. 189, 197 (2017) (quotation marks omitted) (discussing the meaning of

"person aggrieved" in the Fair Housing Act). But as this Court recognized,

"Congress cannot erase Article III's standing requirements by statutorily granting the

right to sue to [an appellant] who could not otherwise have standing." *AVX Corp.*,

923 F.3d at 1362 (alteration in original) (quoting *Raines v. Byrd*, 521 U.S. 811, 820 n.3

(1997)). Nor should the AIA be read as an attempt to do so, given that Congress

enacted § 319 and § 141(c) against the backdrop of the well-settled principle that

22

proof of an injury in fact is "an indispensable part of the plaintiff's case" in every proceeding in an Article III tribunal. *Defenders*, 504 U.S. at 561. Dolby's reliance on § 319 thus cannot supply what Dolby has failed to demonstrate elsewhere: Article III injury in fact.

## III.    Section 314(d) Precludes Judicial Review Of Dolby's Challenges To The Board's Real-Party-In-Interest Determination

Even if Dolby had established Article III standing, a second threshold barrier stands in the way of Dolby's challenge to the Board's application of 35 U.S.C. § 312(a)(2): 35 U.S.C. § 314(d) precludes judicial review of Dolby's challenge to the Board's real-party-in-interest determination.

### A.    The AIA Precludes Judicial Review Of Institution-Related Decisions

The AIA "establishes a two-step procedure for *inter partes* review: the Director's decision whether to institute a proceeding, followed (if the proceeding is instituted) by the Board's conduct of the proceeding and decision with respect to patentability." *St. Jude Med., Cardiology Div., Inc. v. Volcano Corp.*, 749 F.3d 1373, 1375-76 (Fed. Cir. 2014).

The AIA similarly draws a line between these two determinations with respect to judicial review. The AIA generally allows judicial review of the Board's final written decision with respect to patentability. *See* 35 U.S.C. §§ 318, 319. But the AIA creates no mechanism for review of the Director's decisions whether to institute review in the first instance. *St. Jude*, 749 F.3d at 1376 ("The statute provides for an

appeal to this court only of the Board's decision at the second step, not the Director's decision at the first step."). Instead, § 314(d) provides that "[t]he determination by the Director whether to institute an inter partes review under this section shall be final and nonappealable." 35 U.S.C. § 314(d).

The Supreme Court has explained that § 314(d) bars judicial review "where the grounds for attacking the decision to institute inter partes review consist of questions that are closely tied to the application and interpretation of statutes related to the Patent Office's decision to initiate inter partes review." *Cuozzo Speed Techs., LLC v. Lee*, 579 U.S. 261, 274-75 (2016). Applying that principle, the Supreme Court has held that "[t]he agency's application of § 315(b)'s time limit[] … is closely related to its decision whether to institute inter partes review and is therefore rendered nonappealable by § 314(d)." *Thryv, Inc. v. Click-To-Call Techs., LP*, 590 U.S. 45, 48 (2020). Similarly, this Court has held that § 314(d) bars judicial review of a patent owner's claim that "the Board should not have instituted inter partes review because appellee … failed to identify 'all real parties in interest' as required by 35 U.S.C. § 312." *ESIP Series 2*, 958 F.3d at 1380; *see also SIPCO, LLC v. Emerson Elec. Co.*, 980 F.3d 865, 869 (Fed. Cir. 2020).

## B. Section 314(d) Precludes Review Of Dolby's Challenges, Which Are Premised Upon A Provision That Governs Only The Board's Institution Decision

1. Dolby's challenge to the Board's real-party-in-interest determination hinges upon the Board's application of 35 U.S.C. § 312(a)(2), which directs that a "petition

[to institute inter partes review] under section 311 may be considered only if," "the

petition identifies all real parties in interest."  Dolby raised Unified Patents' alleged

failure to comply with § 312(a)(2) both at the petition stage (as a reason for the Board

to deny institution) and again after review was instituted (as an argument about the

contents of the Board's final written decision).  Patent Owner Prelim. Resp., 48, Paper

50, No. IPR2021-00275; Patent Owner Resp. 17-18, Paper 53, No. IPR2021-00275.

On appeal, Dolby contends that the Board's final written decision—which reiterated

the Board's institution-stage decision declining to resolve the parties' dispute over real

parties in interest beyond what Unified Patents identified in its petition—violated

§ 312(a)(2).  Dolby asks (Br. 31) this Court to direct the Board to issue a new final

written decision "to substantively address the [real-party-in-interest] dispute consistent

with § 312(a)(2)."  *See* Br. 6.

Section 314(d) bars judicial review of Dolby's arguments pertaining to the

Board's application of § 312(a)(2).  That provision governs only the Director's

institution decision:  it sets conditions on the Director's consideration of a petition to

institute review.  As in *Cuozzo*, Dolby's claim "under § 312 is little more than a

challenge to the Patent Office's conclusion, under § 314(a), that the 'information

presented in the petition' warranted review."  579 U.S. at 275-76 (concluding that

"§ 314(d) bar[red] [] efforts to attack the Patent Office's determination to institute

inter partes review" based upon petition's compliance with 35 U.S.C. § 312(a)(3),

which requires that petitions be pleaded "with particularity"); *see also Thryv*, 590 U.S. at

25

53 (concluding that § 314(d) bars review of "Section 315(b)'s time limitation [which] is integral to, indeed a condition on, institution"). If (as Dolby argues) § 312(a)(2) required the Board to conduct an inquiry into whether Unified Patents' petition had identified all real parties in interest, that requirement would attend the Board's decision to institute review, not its later conduct of the proceeding or its issuance of a final written decision. *See Thryv*, 590 U.S. at 54 ("Because § 315(b) expressly governs institution and nothing more, a contention that a petition fails under § 315(b) is a contention that the agency should have refused 'to institute an inter partes review.'" (quoting 35 U.S.C. § 314(d))). Similarly, the Board's decision in *SharkNinja*, which guides the proper approach to implementing § 312(a)(2)'s requirements, governed the Board's decisionmaking only with respect to institution, not at the final-decision stage. *SharkNinja*, 2020 WL 5938681, at *9 ("This decision to institute trial is not a final decision as to patentability of any claim for which *inter partes* review has been instituted.").

As in *Thryv* and *Cuozzo*, Dolby's appeal thus asks this Court to review "questions that are closely tied to the application and interpretation of statutes related to the Patent Office's decision to initiate inter partes review." *Cuozzo*, 579 U.S. at 274-75. Indeed, this Court has previously applied *Cuozzo*'s standard to hold that § 314(d) bars review of "a Board decision concerning the 'real parties in interest' requirement of § 312(a)(2)." *ESIP Series 2*, 958 F.3d at 1386; *see SIPCO*, 980 F.3d at

869. That holding equally bars Dolby's challenges to the Board's real-party-in-interest determination under § 312(a)(2) here.

2. Dolby contends that § 314(d)'s review bar is inapplicable, but its arguments are unavailing.

Pointing to the Board's reiteration in the final written decision of its earlier institution-stage determination not to look behind Unified Patents' real-party-in-interest representation, Dolby frames (Br. 8) its challenges as directed to the Board's final written decision, not the institution decision. That tactic does not help it. In *Thryv*, the Supreme Court dispensed with an analogous attempt to recharacterize a challenge where "[t]he Board's final written decision addressed the § 315(b) issue, so [petitioner] argue[d] that it may appeal under § 319, which authorizes appeal from the final written decision." 590 U.S. at 60. The Court reasoned that "even labeled as an appeal from the final written decision, [petitioner's] attempt to overturn the Board's § 315(b) ruling [was] still barred by § 314(d)" because "§ 315(b)'s sole office is to govern institution." *Id.* Thus, the challenge "remain[ed], essentially, that the agency should have refused to institute inter partes review." *Id.* So too here; like § 315(b), § 312(a)(2) limits only the agency's authority to institute review, not its conduct of the resulting proceeding.

Nor does it change the analysis that Dolby claims (Br. 9) to agree with, rather than contest, the Board's decision to institute inter partes review, presumably because Dolby has every interest in preserving its victory regarding patentability in the final

written decision.  The analysis under § 314(d) depends upon the provision of law invoked, not a party's desired outcome.  As this Court recently explained, "[t]he Supreme Court in *Cuozzo* and *Thryv* did not exclude any challenge from the reviewability bar where the invoked provisions of law directly govern institution—as the Court understood was the case for the pleading provision that was at issue in *Cuozzo* (§ 312(a)(3) (a petition 'may be considered only if …')) and the timing provision that was at issue in *Thryv* (§ 315(b) (an [inter partes review] 'may not be instituted if …'))." *Apple Inc. v. Vidal*, 63 F.4th 1, 12 (Fed. Cir. 2023) (second and fourth alterations in original), cert. denied sub nom. *Intel Corp. v. Vidal*, No. 23-135, 2024 WL 71916 (U.S. Jan. 8, 2024).

Here, the invoked provision, § 312(a)(2), directly governs institution and nothing else.  For that reason, it makes no difference whether, as in *ESIP Series 2*, the parties challenged the decision to institute or instead, as here, purport to agree with that decision.  It similarly makes no difference whether, as in *ESIP Series 2*, the parties disagree with the Board's resolution of a real-party-in-interest dispute or instead, as here, contest only the Board's decision to forgo resolution of that issue.  Any change in the Board's application of the provision would affect only institution.  This case demonstrates as much.  Despite Dolby's assertion (Br. 10) that its request would not impact institution, Dolby's proposed approach would delay institution until the question of additional real parties in interest had been resolved.  On the other hand,

the Board's approach to § 312(a)(2) would in no way alter the Board's final written decision on patentability. *See infra* pp. 30-31.

Unlike the present appeal, which relies only on a provision governing the institution decision, Dolby's cited cases (Br. 7-10) involved challenges premised upon statutory provisions that governed the Board's post-institution conduct of an inter partes review. In *SAS Inst., Inc. v. Iancu*, 138 S. Ct. 1348 (2018), for instance, the Supreme Court "located that rule in § 318(a), which requires the agency to decide 'the patentability of *any* patent claim challenged by the petitioner'" in its final written decision. *Thryv*, 590 U.S. at 58 (quoting *SAS Inst.*, 138 S. Ct. at 1353). Because the invoked statutory provision pertained to the final written decision, the challenge asked the Court to "ensure that an inter partes review," once instituted, "proceeds in accordance with the law's demands"—not to police the application of institution-related standards. *SAS Inst.*, 138 S. Ct. at 1359.

This Court's cases follow the same pattern. In *Facebook, Inc. v. Windy City Innovations, LLC*, this Court held it had authority to review the Director's "exercise [of] his discretion to decide whether to 'join as a party' [a] joinder applicant" under 35 U.S.C. § 315(c) because "the joinder decision is a separate and subsequent decision to the [institution] decision." 973 F.3d 1321, 1332 (Fed. Cir. 2020). Similarly, in *Uniloc 2017 LLC v. Facebook Inc.*, 989 F.3d 1018 (Fed. Cir. 2021), and *Intuitive Surgical, Inc. v. Ethicon LLC*, 25 F.4th 1035 (Fed. Cir. 2022), this Court found that 35 U.S.C. § 315(e)(1)'s estoppel provision constituted a post-institution obligation because it

29

prohibits a barred petitioner from "maintain[ing]," as well as from "request[ing]," a USPTO proceeding. 35 U.S.C. § 315(e); *see Uniloc*, 989 F.3d at 1027; *Intuitive Surgical*, 25 F.4th at 1040. "Section 315(e)(1)'s use of 'maintain' contemplates that the estoppel provision 'governs at any stage of a subsequent proceeding before the [US]PTO—its application is not limited to the institution stage.'" *Uniloc*, 989 F.3d at 1027 (quoting *Credit Acceptance Corp. v. Westlake Servs.*, 859 F.3d 1044, 1050 (Fed. Cir. 2017)).

## IV.    Dolby's Challenges Fail On The Merits

Even assuming that Dolby's challenges survive the two threshold obstacles identified above, those challenges are unavailing. Dolby identifies no statutory provision that obligates the Board to verify—or even identify—real parties in interest in its final written decision. To the extent Dolby argues otherwise, its challenges to the Board's final decision here and the guidance issued in the *SharkNinja* decision are thus meritless. Furthermore, because *SharkNinja* governs agency procedures, the Director acted properly by issuing guidance regarding the Board's exercise of her delegated institution authority by designating *SharkNinja* as precedential rather than through a notice-and-comment rulemaking.

### A.    Dolby's Challenge To The Board's Final Written Decision Is Without Merit

1. As explained, *supra* pp. 25-30, Dolby's claim that the Board erred under § 312(a)(2) by declining to look beyond Unified Patents' list of real parties in interest is an institution-related challenge barred by § 314(d). Even supposing, however, that

Dolby's appeal could be recharacterized as challenging "the manner in which the agency's review 'proceeds' once instituted," *Thryv*, 590 U.S. at 58, Dolby's challenge to the final written decision would be meritless.

The standards governing the Board's final written decision are supplied by 35 U.S.C. § 318(a), not § 312(a)(2). That provision directs the Board to "issue a final written decision *with respect to [] patentability*"; it says nothing about real parties in interest. 35 U.S.C. § 318(a) (emphasis added). Because there is no statutory requirement to identify real parties in interest in the final written decision, the Board did not err by declining to do so. Rather, by addressing the patentability of Dolby's claims, the Board discharged all of its statutory obligations. Put differently, if as Dolby contends (Br. 10), the "statutory challenge under § 312(a)(2) neither implicates institution nor a question closely related to institution," then it implicates no statutory duty at all.

2. Even if Dolby could raise a challenge to the Board's application of § 312(a)(2) in this case, that challenge would fail. The USPTO's approach here and in the precedential *SharkNinja* decision is consistent with the statutory text and is otherwise reasonable.

Section 312(a)(2) provides that a petition for inter partes review may not "be considered" unless "the petition identifies all real parties in interest." 35 U.S.C. § 312(a)(2). Unified Patents' petition identifies Unified Patents itself as the only real party in interest—a representation that Unified Patents must make in good faith. *See*

37 C.F.R. § 42.11(a), (c); *see also id.* § 11.18(b)(2) (requiring that such representations, "formed after an inquiry reasonable under the circumstances[] … have evidentiary support"). Nothing in the statute provides that the Board must independently verify such a representation before it may consider the petition. Instead, any statutory obligation for the USPTO to verify the real parties in interest listed by a petitioner comes from separate provisions of the AIA: the estoppel provisions set forth in § 315(a)(1) and § 315(e)(1) and the time-bar provision set forth in § 315(b).[1]

The USPTO's approach to verifying a petitioner's representation regarding real parties in interest accords with all of these provisions. Where a real-party-in-interest dispute is relevant to the limitations on the agency's institution authority set out in § 315, the Board resolves that dispute to ensure the agency respects Congress's prohibitions on instituting review. *See Unified Patents, LLC v. MemoryWeb, LLC*, No. IPR2021-01413, Paper 76, at 6 (on Director Review, P.T.A.B. May 22, 2023) ("The Board can and should make a determination of the real parties in interest or privity in any proceeding in which that determination may impact the underlying proceeding, for example, but not limited to, a time bar under 35 U.S.C. § 315(b) or an estoppel

---

[1] To be sure, even apart from § 315, the USPTO has the authority to impose consequences for failure to identify all real parties in interest in appropriate circumstances. *See, e.g., Atlanta Gas Light Co. v. Bennett Regulator Guards, Inc.*, 33 F.4th 1348, 1350, 1352-53 (Fed. Cir. 2022) (discussing prior Board decision in which the Board terminated an inter partes review proceeding based in part on petitioner's failure to list all real parties in interest in its petition, as required by 35 U.S.C. § 312(a)(2).).

under 35 U.S.C. § 315(e) that might apply."). But where it is immaterial to the agency's authority to institute an inter partes review whether the agency relies on a petitioner's list of real parties in interest or resolves a patent owner's assertion that such a list is incomplete, there is nothing in the statute that requires the agency to verify the petitioner's disclosure of "all" alleged real parties in interest.

The Board's decisions here and in *SharkNinja* simply reflects this common-sense approach to implementing the AIA's various institution-related requirements and limitations. *Cf.* 35 U.S.C. § 316(b) (requiring the Director to consider, among other things, "the efficient administration of the Office"). Moreover, the *SharkNinja* rule preserves the ability of putative real-parties-in-interest to litigate their real-party-in-interest status in their own cases. *See MemoryWeb, LLC*, No. IPR2021-01413, Paper 76, at 5 (reciting petitioner's argument that determining real-party-in-interest status could prejudice the putative real parties in interest by binding them without their participation en route to holding that "[t]he Board should not have determined whether Apple and Samsung are RPIs in this proceeding given that determination was not necessary to resolve the proceeding").

Nor would Dolby's proposed categorical rule requiring the Director to ascertain whether alleged additional parties qualify as real parties in interest in all circumstances produce sensible results. As the Board in *SharkNinja* explained, such a rule would impose substantial—and in some instances, unnecessary—costs. 2020 WL 5938681, at *7-8 (noting that "[w]hether a non-party is a [real party in interest] is a

33

'highly fact-dependent question' and must be considered on a case-by-case basis," which requires "extensive analysis"); *see also Applications in Internet Time, LLC v. RPX Corp.*, 897 F.3d 1336, 1351 (Fed. Cir. 2018) ("Determining whether a non-party is a 'real party in interest' demands a flexible approach that takes into account both equitable and practical considerations, with an eye toward determining whether the non-party is a clear beneficiary that has a preexisting, established relationship with the petitioner."). The agency's institution decision is supposed to be made within three months after the patent owner's preliminary response is due, *see* 35 U.S.C. § 314(b), and its final written decision is generally to be issued by a year later, *see id.* § 316(a)(11). A rigid rule requiring the agency to stall the institution decision—or revisit institution during the period to issue the final written decision—risks undermining Congress's intent to create a quick and efficient administrative mechanism for resolving patentability challenges. *See* H.R. Rep. No. 112-98, pt. 1, at 39-40 (Congress sought to "establish a more efficient and streamlined patent system that will improve patent quality and limit unnecessary and counterproductive litigation costs.").

Indeed, this Court has recognized that the AIA provides for a "practical" approach to the real-party-in-interest determination. *Worlds Inc. v. Bungie, Inc.*, 903 F.3d 1237, 1243-44 (Fed. Cir. 2018). In *Worlds Inc.*, this Court held that the "Board was entitled to rely[] … on [petitioner's] list of all real parties in interest, which raised no time-bar issues." *Id.* at 1245-46. Only when the patent owner "presented evidence" implicating § 315(b)'s time bar was the Board required "to make any factual

determinations necessary to evaluate whether [petitioner] had satisfied its burden to demonstrate that its petition was not time-barred based on the complaints served upon … the alleged [additional] real party in interest." *Id.* at 1246.

Consistent with this framework, the Board has made clear that it "understand[s] that '[patent owners] should not be forced to defend against later judicial or administrative attacks on the same or related grounds by a party that is so closely related to the original petitioner as to qualify as a real party in interest.'" *SharkNinja*, 2020 WL 5938681, at *8 (second alteration in original) (quoting *Applications in Internet Time, LLC*, 897 F.3d at 1350). But where "that is not the case before" the Board—*i.e.*, "the Board has determined that such a lengthy exercise is unnecessary for the purposes of rendering a decision on institution of trial"—the agency has reasonably determined that declining to resolve a challenge to the petitioner's representation that it has listed all the real parties in interest "better serves the interest of cost and efficiency." *Id.* This is especially true given that such an approach preserves patent owners' freedom to argue in any separate proceeding or civil action that the alleged real parties in interest should be estopped under § 315(e). *See supra* p. 33.

## B. The Director Properly Designated *SharkNinja* As Precedential Without Notice And Comment

Congress gave the Director responsibility for "providing policy direction and management supervision" for the USPTO. 35 U.S.C. § 3(a)(2)(A). The Director can

properly exercise that supervisory authority by designating certain Board decisions to serve as precedent for future Board panels.

1.  The APA provides that agencies must use notice-and-comment rulemaking to implement "substantive" rules. *Lincoln v. Vigil*, 508 U.S. 182, 196 (1993) (quotation marks omitted) (citing 5 U.S.C. § 553(b)).  Substantive rules are those that are "'issued by an agency pursuant to statutory authority' and [have] the 'force and effect of law.'" *PDR Network, LLC v. Carlton & Harris Chiropractic, Inc.*, 139 S. Ct. 2051, 2055 (2019) (quotation marks omitted).  One "characteristic inherent in the concept of a 'substantive rule'" is that it "affect[s] individual rights and obligations." *Chrysler Corp. v. Brown*, 441 U.S. 281, 302 (1979) (quotation marks omitted); *see also Stupp Corp. v. United States*, 5 F.4th 1341, 1352 (Fed. Cir. 2021) ("[Substantive] rules alter the landscape of individual rights and obligations, binding parties with the force and effect of law[]…").

But the APA's "notice-and-comment requirements … do not apply to 'interpretative rules, general statements of policy, or rules of agency organization, procedure, or practice.'" *Lincoln*, 508 U.S. at 196 (quoting 5 U.S.C. § 553(b)).  "[R]ules of agency organization, procedure, or practice"—generally known as procedural rules—are "primarily directed toward improving the efficient and effective operations of an agency." *American Fed'n of Labor & Cong. of Indus. Orgs. v. NLRB*, 57 F.4th 1023, 1034 (D.C. Cir. 2023) (quotation marks omitted).  "The 'critical feature of the procedural exception [of § 553(b)(A)] is that it covers agency actions that do not

36

themselves alter the rights or interests of parties, although it may alter the manner in which the parties present themselves or their viewpoints to the agency." *In re Chestek PLLC*, 92 F.4th 1105, 1109 (Fed. Cir. 2024) (second alteration in original) (quoting *JEM Broad. Co. v. FCC*, 22 F.3d 320, 326-27 (D.C. Cir. 1994)). Because "procedure impacts on outcomes and thus can virtually always be described as affecting substance," the issue is "one of degree." *JEM Broad.*, 22 F.3d at 326 (quotation marks omitted). The Court's "task is to identify which substantive effects are sufficiently grave so that notice and comment are needed to safeguard the policies underlying the APA." *Id.* at 327 (quotations marks omitted).

2. The Director's designation of the *SharkNinja* institution decision as precedential established a procedural—not substantive—rule for future Board panels to follow in exercising the Director's delegated institution authority, and thus does not implicate the APA's notice-and-comment rulemaking requirements.

The authority to institute an inter partes review is the Director's alone, and she has delegated this authority to the Board. *See* 35 U.S.C. § 314(a); 37 C.F.R. § 42.4(a). Beyond making a determination that a petition establishes a "reasonable likelihood that the petitioner would prevail with respect to at least" one challenged claim, 35 U.S.C. § 314(a), the statute leaves it to the Director's discretion what to include in an institution decision. By designating the *SharkNinja* institution decision precedential, the Director provided guidance to the Board about how to efficiently "approach" issuing institution decisions on her behalf, 2020 WL 5938681, at *8, consistent with

her responsibility to "provid[e] policy direction and management supervision," 35

U.S.C. § 3(a)(2)(A). *See* Patent Trial & Appeal Bd., *Standard Operating Procedure 2*

*(revision 11)*, *supra*, at 2-3 (noting that the Board issues thousands of decisions each

year, the Director has an interest in ensuring such decisions are "efficient" and

"consistent," and that "[a] precedential decision establishes binding authority" for the

Board to follow). That guidance explains that disputes over which entities qualify as a

real party in interest involve "highly fact-dependent question[s]," the resolution of

which often amounts to "a lengthy exercise." *SharkNinja*, 2020 WL 5938681, at *7-8

(quotation marks omitted). And where there is no assertion that the alleged

participation of an unnamed party would affect the propriety of instituting review, the

guidance explains that the "interest[s] of cost and efficiency" will be "better serve[d]"

by declining to resolve the dispute. *Id.* at *8. Such guidance ensures that—just as the

Director would do if exercising her institution-related discretion herself—the Board

does not waste agency resources resolving determinations that do not affect the

statutory "time bar, estoppel, or anything else material to the" decision to institute. *Id.*

Even assuming the guidance issued through *SharkNinja* qualifies as a "rule," it

therefore falls squarely within 5 U.S.C. § 553(b)'s exception for procedural rules. The

approach to institution described in *SharkNinja* is "primarily directed toward

improving the efficient and effective operations of an agency." *American Fed'n*, 57

F.4th at 1034 (quoting *Mendoza v. Perez*, 754 F.3d 1002, 1023 (D.C. Cir. 2014)); *see*

*JEM Broad.*, 22 F.3d at 328 (stating that "judgment[s] about what mechanics and

processes are most efficient" are procedural).  Congress provided the procedural-rule "exemption from the normal rulemaking procedures to ensure that agencies retain latitude in organizing their internal operations." *Mendoza*, 754 F.3d at 1023 (quotation marks omitted).  If the Director could not give delegees directions about how to resolve procedural issues that arise in institution decisions without going through notice-and-comment rulemaking, that latitude would be severely compromised.

The *SharkNinja* decision, moreover, lacks any hallmarks of a substantive rule. It does not "grant rights, impose obligations, or produce other significant effects on private interests." *American Tort Reform Ass'n v. Occupational Safety & Health Admin.*, 738 F.3d 387, 395 (D.C. Cir. 2013) (quotation marks omitted).  The guidance the decision provides applies to only the Board's own internal decision-making processes; it does not bind any private parties or entail any grave effect on private interests. Petitioners for inter partes review are still required to exercise good faith in identifying all real parties in interest.  *SharkNinja*, 2020 WL 5938681, at *7 ("[P]etitioners must comply with the[] requirements [in § 312(a)(2)] in good faith." (citing 37 C.F.R. § 42.11(a))).  Failure to proceed in good faith can lead to sanctions, including de-institution of inter partes review.  37 C.F.R. § 42.11(d); *see also Atlanta Gas Light Co.*, 33 F.4th at 1350, 1352-53 (holding that the court lacked jurisdiction to review the Board's termination decision, which vacated its decision to institute review, in part as a sanction for failure to identify all of the real parties in interest).  Patent owners, for their part, are not denied the benefit of estoppel under § 315(e) or the time bar under

39

§ 315(b); if there is any question that a dispute over a petitioner's real-party-in-interest list will affect the USPTO's statutory authority to institute or conduct the requested inter partes review, the agency will resolve that dispute. And *SharkNinja* in no way circumscribes courts' authority to later determine, or a patent owner's ability to assert, estoppel under § 315(e) against any party—whether or not named a real party in interest—in future proceedings. *See Coalition for Common Sense in Gov't Procurement v. Secretary of Veterans Affairs*, 464 F.3d 1306, 1317 (Fed. Cir. 2006) (a substantive rule's change in existing law must be "binding not only within the agency[] but … binding on tribunals outside the agency"); *see also IOENGINE, LLC v. PayPal Holdings, Inc.*, 607 F. Supp. 3d 464, 518 (D. Del. 2022) (stating that "the court will decide whether the [inter partes review] estoppel applicable to [petitioner] also applies to PayPal," where plaintiff alleged that PayPal, which was not listed as a real party in interest to the inter partes review, was nonetheless estopped under § 315(e)(2)).

    3.  Dolby's arguments regarding notice-and-comment requirements miss the mark. Dolby errs in suggesting that 35 U.S.C. § 316(a)(4) provides that "the Director may *only* issue standards governing inter partes review through 'regulations'" subject to notice-and-comment rulemaking under 35 U.S.C. § 316(a)(4). Br. 24 (emphasis added). Section 316(a)(4) imposes no such limitation on the Director's authority to "provid[e] policy direction and management supervision" for the USPTO through any means and on any matter, including her unilateral authority over institution. 35 U.S.C. §§ 3(a)(2)(A), 314(a). Section 316(a) lists a number of topics related to inter partes

review on which the Director "shall prescribe regulations," 35 U.S.C. § 316(a), which

the Director has done, *see* 37 C.F.R. §§ 42.1-42.80.  But nothing in § 316(a) or any

other provision requires the Director to promulgate regulations dictating how

discretion over institution decisions is to be exercised or otherwise limits the

Director's ability to issue directions within the agency.  Thus, the question is whether

a separate statutory provision—5 U.S.C. § 553(b)—prohibited the Director from

designating *SharkNinja* as precedential without undertaking a notice-and-comment

rulemaking.

Dolby's arguments that the rule is a substantive one demanding notice-and-

comment rulemaking generally retread the same ground as its unpersuasive theories of

standing.  Dolby contends (Br. 25) that the *SharkNinja* decision affects individual

rights and obligations by depriving parties to inter partes review of the "right to

know" the identity of possible additional real parties in interest.  But there is no such

right under the statute.  As explained, *see supra* pp. 31-35, to the extent there is an

interest in the agency's verification of real parties in interest, that interest is tied to the

propriety of institution under the time bar and estoppel provisions of § 315.  But

*SharkNinja* is limited to situations where those provisions are not implicated.  *See* 2020

WL 5938681, at *8.

Dolby also reiterates (Br. 25) its view that the approach in *SharkNinja* deprives

parties like Dolby of assurance that the Board lacks conflicts of interests in a given

proceeding.  But nothing in *SharkNinja* prevents the Board from ascertaining its

41

absence of conflicts. To the contrary, in *SharkNinja* itself, the Board explicitly performed a conflict check with respect to the alleged real party in interest, despite not resolving the real-party-in-interest dispute. *See* 2020 WL 5938681, at *7 n.10.

Similarly, Dolby's speculation (Br. 25-26) that, due to the approach outlined in *SharkNinja*, it will face future petitions for inter partes review cannot transform this procedural measure into a substantive rule. As explained, *see supra* p. 33, nothing in *SharkNinja* prevents Dolby or other prevailing patent owners from asserting estoppel with respect to suspected real parties in interest should those future petitions ever materialize. And finally, Dolby is wrong to contend that the *SharkNinja* decision alters the obligation of petitioners to identify real parties in interest. As explained above, petitioners must still identify real parties in interest in good faith. *See* 37 C.F.R. § 42.11(a).

## CONCLUSION

For the foregoing reasons, this Court should dismiss Dolby's challenges to the Board's real-party-in-interest determination, or in the alternative, affirm that determination.

Respectfully submitted,

*Of Counsel:*

FARHEENA Y. RASHEED
  *Acting Solicitor*

PETER J. AYERS
  *Senior Counsel for Patent Law and Litigation*
MICHAEL S. FORMAN
  *Associate Solicitor*
  *Office of the Solicitor*
  *U.S. Patent and Trademark Office*
  *Mail Stop 8, P.O. Box 1450*
  *Alexandria, VA 22313*

  *(571) 272-9035*

BRIAN M. BOYNTON
  *Principal Deputy Assistant Attorney*
  *General*

JOSHUA M. SALZMAN
KEVIN J. KENNEDY
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7234*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*

  *(202) 514-4214*

March 2024

44

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 10,787 words.  This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in Garamond 14-point font, a proportionally spaced typeface.


*/s/ Kevin J. Kennedy*

**ADDENDUM**

## TABLE OF CONTENTS

35 U.S.C. § 3 ............................................................................................................... A1

35 U.S.C. § 312 ......................................................................................................... A2

35 U.S.C. § 314 ......................................................................................................... A3

35 U.S.C. § 315 ......................................................................................................... A4

35 U.S.C. § 316 ......................................................................................................... A6

35 U.S.C. § 318 ......................................................................................................... A9

35 U.S.C. § 319 ......................................................................................................... A10

37 C.F.R. § 42.11 ..................................................................................................... A11

**35 U.S.C. § 3**

**§ 3.  Officers and employees (EXCERPT)**

**(a)**  Under Secretary and Director.—

**(1)**  In general.—

The powers and duties of the United States Patent and Trademark Office shall be vested in an Under Secretary of Commerce for Intellectual Property and Director of the United States Patent and Trademark Office (in this title referred to as the "Director"), who shall be a citizen of the United States and who shall be appointed by the President, by and with the advice and consent of the Senate. The Director shall be a person who has a professional background and experience in patent or trademark law.

**(2)**  Duties.—

**(A)**  In general.—

The Director shall be responsible for providing policy direction and management supervision for the Office and for the issuance of patents and the registration of trademarks. The Director shall perform these duties in a fair, impartial, and equitable manner.

**(B)**  Consulting with the public advisory committees.—

The Director shall consult with the Patent Public Advisory Committee established in section 5 on a regular basis on matters relating to the patent operations of the Office, shall consult with the Trademark Public Advisory Committee established in section 5 on a regular basis on matters relating to the trademark operations of the Office, and shall consult with the respective Public Advisory Committee before submitting budgetary proposals to the Office of Management and Budget or changing or proposing to change patent or trademark user fees or patent or trademark regulations which are subject to the requirement to provide notice and opportunity for public comment under section 553 of title 5, as the case may be.

…

**35 U.S.C. § 312**

**§ 312.  Petitions**

**(a)**  Requirements of Petition.—A petition filed under section 311 may be considered only if—

   **(1)**  the petition is accompanied by payment of the fee established by the Director under section 311;

   **(2)**  the petition identifies all real parties in interest;

   **(3)**  the petition identifies, in writing and with particularity, each claim challenged, the grounds on which the challenge to each claim is based, and the evidence that supports the grounds for the challenge to each claim, including—

      **(A)**  copies of patents and printed publications that the petitioner relies upon in support of the petition; and

      **(B)**  affidavits or declarations of supporting evidence and opinions, if the petitioner relies on expert opinions;

   **(4)**  the petition provides such other information as the Director may require by regulation; and

   **(5)**  the petitioner provides copies of any of the documents required under paragraphs (2), (3), and (4) to the patent owner or, if applicable, the designated representative o f the patent owner.

**(b)**  Public Availability.—

As soon as practicable after the receipt of a petition under section 311, the Director shall make the petition available to the public.

**35 U.S.C. § 314**

**§ 314. Institution of inter partes review**

**(a)** Threshold.—

The Director may not authorize an inter partes review to be instituted unless the Director determines that the information presented in the petition filed under section 311 and any response filed under section 313 shows that there is a reasonable likelihood that the petitioner would prevail with respect to at least 1 of the claims challenged in the petition.

**(b)** Timing.—The Director shall determine whether to institute an inter partes review under this chapter pursuant to a petition filed under section 311 within 3 months after—

**(1)** receiving a preliminary response to the petition under section 313; or

**(2)** if no such preliminary response is filed, the last date on which such response may be filed.

**(c)** Notice.—

The Director shall notify the petitioner and patent owner, in writing, of the Director's determination under subsection (a), and shall make such notice available to the public as soon as is practicable. Such notice shall include the date on which the review shall commence.

**(d)** No Appeal.—

The determination by the Director whether to institute an inter partes review under this section shall be final and nonappealable.

**35 U.S.C. § 315**

**§ 315.  Relation to other proceedings or actions**

**(a)**  Infringer's Civil Action.—

 **(1)**  Inter partes review barred by civil action.—

 An inter partes review may not be instituted if, before the date on which the petition for such a review is filed, the petitioner or real party in interest filed a civil action challenging the validity of a claim of the patent.

 **(2)**  Stay of civil action.—If the petitioner or real party in interest files a civil action challenging the validity of a claim of the patent on or after the date on which the petitioner files a petition for inter partes review of the patent, that civil action shall be automatically stayed until either—

  **(A)**  the patent owner moves the court to lift the stay;

  **(B)**  the patent owner files a civil action or counterclaim alleging that the petitioner or real party in interest has infringed the patent; or

  **(C)**  the petitioner or real party in interest moves the court to dismiss the civil action.

 **(3)**  Treatment of counterclaim.—

 A counterclaim challenging the validity of a claim of a patent does not constitute a civil action challenging the validity of a claim of a patent for purposes of this subsection.

**(b)**  Patent Owner's Action.—

An inter partes review may not be instituted if the petition requesting the proceeding is filed more than 1 year after the date on which the petitioner, real party in interest, or privy of the petitioner is served with a complaint alleging infringement of the patent. The time limitation set forth in the preceding sentence shall not apply to a request for joinder under subsection (c).

**(c)**  Joinder.—

If the Director institutes an inter partes review, the Director, in his or her discretion, may join as a party to that inter partes review any person who properly files a petition under section 311 that the Director, after receiving a preliminary response under section 313 or the expiration of the time for filing such a response, determines warrants the institution of an inter partes review under section 314.

**(d)** Multiple Proceedings.—

Notwithstanding sections 135(a), 251, and 252, and chapter 30, during the pendency of an inter partes review, if another proceeding or matter involving the patent is before the Office, the Director may determine the manner in which the inter partes review or other proceeding or matter may proceed, including providing for stay, transfer, consolidation, or termination of any such matter or proceeding.

**(e)** Estoppel.—

**(1)** Proceedings before the office.—

The petitioner in an inter partes review of a claim in a patent under this chapter that results in a final written decision under section 318(a), or the real party in interest or privy of the petitioner, may not request or maintain a proceeding before the Office with respect to that claim on any ground that the petitioner raised or reasonably could have raised during that inter partes review.

**(2)** Civil actions and other proceedings.—

The petitioner in an inter partes review of a claim in a patent under this chapter that results in a final written decision under section 318(a), or the real party in interest or privy of the petitioner, may not assert either in a civil action arising in whole or in part under section 1338 of title 28 or in a proceeding before the International Trade Commission under section 337 of the Tariff Act of 1930 that the claim is invalid on any ground that the petitioner raised or reasonably could have raised during that inter partes review.

**35 U.S.C. § 316**

**§ 316.  Conduct of inter partes review**

**(a)**  Regulations.—The Director shall prescribe regulations—

>  **(1)**  providing that the file of any proceeding under this chapter shall be made available to the public, except that any petition or document filed with the intent that it be sealed shall, if accompanied by a motion to seal, be treated as sealed pending the outcome of the ruling on the motion;

>  **(2)**  setting forth the standards for the showing of sufficient grounds to institute a review under section 314(a);

>  **(3)**  establishing procedures for the submission of supplemental information after the petition is filed;

>  **(4)**  establishing and governing inter partes review under this chapter and the relationship of such review to other proceedings under this title;

>  **(5)**  setting forth standards and procedures for discovery of relevant evidence, including that such discovery shall be limited to—

>  >  **(A)**  the deposition of witnesses submitting affidavits or declarations; and

>  >  **(B)**  what is otherwise necessary in the interest of justice;

>  **(6)**  prescribing sanctions for abuse of discovery, abuse of process, or any other improper use of the proceeding, such as to harass or to cause unnecessary delay or an unnecessary increase in the cost of the proceeding;

>  **(7)**  providing for protective orders governing the exchange and submission of confidential information;

>  **(8)**  providing for the filing by the patent owner of a response to the petition under section 313 after an inter partes review has been instituted, and requiring that the patent owner file with such response, through affidavits or declarations, any additional factual evidence and expert opinions on which the patent owner relies in support of the response;

>  **(9)**  setting forth standards and procedures for allowing the patent owner to move to amend the patent under subsection (d) to cancel a challenged claim or propose a reasonable number of substitute claims, and ensuring that any information submitted by the patent owner in support of any amendment entered under subsection (d) is made available to the public as part of the prosecution history of the patent;

A6

**(10)** providing either party with the right to an oral hearing as part of the proceeding;

**(11)** requiring that the final determination in an inter partes review be issued not later than 1 year after the date on which the Director notices the institution of a review under this chapter, except that the Director may, for good cause shown, extend the 1-year period by not more than 6 months, and may adjust the time periods in this paragraph in the case of joinder under section 315(c);

**(12)** setting a time period for requesting joinder under section 315(c); and

**(13)** providing the petitioner with at least 1 opportunity to file written comments within a time period established by the Director.

**(b)** Considerations.—

In prescribing regulations under this section, the Director shall consider the effect of any such regulation on the economy, the integrity of the patent system, the efficient administration of the Office, and the ability of the Office to timely complete proceedings instituted under this chapter.

**(c)** Patent Trial and Appeal Board.—

The Patent Trial and Appeal Board shall, in accordance with section 6, conduct each inter partes review instituted under this chapter.

**(d)** Amendment of the Patent.—

**(1)** In general.—During an inter partes review instituted under this chapter, the patent owner may file 1 motion to amend the patent in 1 or more of the following ways:

**(A)** Cancel any challenged patent claim.

**(B)** For each challenged claim, propose a reasonable number of substitute claims.

**(2)** Additional motions.—

Additional motions to amend may be permitted upon the joint request of the petitioner and the patent owner to materially advance the settlement of a proceeding under section 317, or as permitted by regulations prescribed by the Director.

**(3)** Scope of claims.—

An amendment under this subsection may not enlarge the scope of the claims of the patent or introduce new matter.

**(e)** Evidentiary Standards.—

In an inter partes review instituted under this chapter, the petitioner shall have the burden of proving a proposition of unpatentability by a preponderance of the evidence.

**35 U.S.C. § 318**

**§ 318. Decision of the Board**

**(a)** Final Written Decision.—

If an inter partes review is instituted and not dismissed under this chapter, the Patent Trial and Appeal Board shall issue a final written decision with respect to the patentability of any patent claim challenged by the petitioner and any new claim added under section 316(d).

**(b)** Certificate.—

If the Patent Trial and Appeal Board issues a final written decision under subsection (a) and the time for appeal has expired or any appeal has terminated, the Director shall issue and publish a certificate canceling any claim of the patent finally determined to be unpatentable, confirming any claim of the patent determined to be patentable, and incorporating in the patent by operation of the certificate any new or amended claim determined to be patentable.

**(c)** Intervening Rights.—

Any proposed amended or new claim determined to be patentable and incorporated into a patent following an inter partes review under this chapter shall have the same effect as that specified in section 252 for reissued patents on the right of any person who made, purchased, or used within the United States, or imported into the United States, anything patented by such proposed amended or new claim, or who made substantial preparation therefor, before the issuance of a certificate under subsection (b).

**(d)** Data on Length of Review.—

The Office shall make available to the public data describing the length of time between the institution of, and the issuance of a final written decision under subsection (a) for, each inter partes review.

**35 U.S.C. § 319**

## § 319.  Appeal

A party dissatisfied with the final written decision of the Patent Trial and Appeal Board under section 318(a) may appeal the decision pursuant to sections 141 through 144. Any party to the inter partes review shall have the right to be a party to the appeal.

**37 C.F.R. § 42.11**

## § 42.11.  Duty of candor; signing papers; representations to the Board; sanctions.

**(a)**  Duty of candor. Parties and individuals involved in the proceeding have a duty of candor and good faith to the Office during the course of a proceeding.

**(b)**  Signature. Every petition, response, written motion, and other paper filed in a proceeding must comply with the signature requirements set forth in § 11.18(a) of this chapter. The Board may expunge any unsigned submission unless the omission is promptly corrected after being called to the counsel's or party's attention.

**(c)**  Representations to the Board. By presenting to the Board a petition, response, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney, registered practitioner, or unrepresented party attests to compliance with the certification requirements under § 11.18(b)(2) of this chapter.

**(d)**  Sanctions—(1) In general. If, after notice and a reasonable opportunity to respond, the Board determines that paragraph (c) of this section has been violated, the Board may impose an appropriate sanction on any attorney, registered practitioner, or party that violated the rule or is responsible for the violation.

> **(2)** Motion for sanctions. A motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates paragraph (c) of this section. The motion must be authorized by the Board under § 42.20 prior to filing the motion. At least 21 days prior to seeking authorization to file a motion for sanctions, the moving party must serve the other party with the proposed motion. A motion for sanctions must not be filed or be presented to the Board if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service of such motion or within another time the Board sets. If warranted, the Board may award to the prevailing party the reasonable expenses, including attorney's fees, incurred for the motion.

> **(3)** On the Board's initiative. On its own, the Board may order an attorney, registered practitioner, or party to show cause why conduct specifically described in the order has not violated paragraph (c) of this section and why a specific sanction authorized by the Board should not be imposed.

> **(4)** Nature of a sanction. A sanction imposed under this rule must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated and should be consistent with § 42.12.

> **(5)**  Requirements for an order. An order imposing a sanction must describe the sanctioned conduct and explain the basis for the sanction.