No. 23-2110

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

DOLBY LABORATORIES LICENSING CORPORATION,

*Appellant,*

v.

UNIFIED PATENTS, LLC,

*Appellee.*

KATHERINE K. VIDAL, Under Secretary of Commerce for Intellectual Property and Director of the United States Patent and Trademark Office,

*Intervenor*

Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board, *Inter Partes* Review No. 2021-00275

## [CORRECTED NON-CONFIDENTIAL] REPLY BRIEF OF APPELLANT DOLBY LABORATORIES LICENSING CORPORATION

Kayvan B. Noroozi
Noroozi PC
11601 Wilshire Blvd., Suite 2170
Los Angeles, CA 90025
310.975.7074
kayvan@noroozipc.com

Richard A. Epstein
16 Thomas Place
Norwalk, CT 06853
773.450.4476
raepstein43@gmail.com

*Counsel for Appellant*

**CERTIFICATE OF INTEREST**

Counsel for Dolby Laboratories Licensing Corporation certifies that:

1.      The full name of every party represented by me is: Dolby Laboratories Licensing Corporation.

2.      The name of the real party in interest represented by me is: Dolby Laboratories, Inc.

3.      The full names of all parent corporations for the entities and all publicly held companies that own 10 percent or more of the stock of the party represented by me is: Dolby Laboratories, Inc. (a Delaware corporation) and its subsidiary Dolby Laboratories, Inc. (a California corporation).

4.      The names of all law firms and the partners or associates who appeared for Appellant before the United States Patent and Trademark Office, or are expected to appear in this Court (and who have not or will not enter an appearance in this case), are: Walter Karl Renner, Nicolas Stephens, Indranil Sarkar, and Christopher Green of FISH & RICHARDSON P.C.

5.      The following cases could affect or be affected by this appeal: None.

6.      Counsel has no information to provide pursuant to Rule 47.4(a)(6) and 26.1(b) and (c) as this is not a criminal or bankruptcy case.

Dated:  May 3, 2024                    By:        */s/ Kayvan B. Noroozi*

                                                            Kayvan B. Noroozi

i

# TABLE OF CONTENTS

I.   The Board's refusal to identify Unified's real parties in interest, and the Director's underlying policy, should be vacated as *ultra vires* ................ 1

    A.   Dolby has standing to challenge the violation of its right to information under §312(a)(2) ........................................................... 1

        1.   Section 312(a)(2) grants Dolby a statutory information right ................................................................................... 1

        2.   Violation of a statutory right to information is an established injury in fact ............................................... 2

        3.   The Board's decision and the Director's policy violated Dolby's information right and caused it an injury in fact ......... 3

        4.   The Director's and Unified's arguments are incorrect ............... 5

            a.   No affidavit required ..................................................... 5

            b.   Prevailing on unpatentability does not deprive standing as to the Board's violation of §312(a)(2) ........... 6

            c.   Dolby is injured, not "better off," and need not wait for a future proceeding ............................................. 6

            d.   Informational injury standing is not limited to "public disclosure laws," but that alleged distinction fails here ......................................................... 7

            e.   Dolby need not show "downstream consequences" ......... 8

            f.   Dolby has suffered numerous "downstream consequences" ............................................................ 10

        5.   Dolby's injuries are traceable and redressable ........................ 17

        6.   Unified's "prudential" arguments are wrong ........................... 18

    B.   This Court has jurisdiction notwithstanding § 314(d) ....................... 18

    C.   The Board's refusal to identify Unified's RPIs, and the Director's underlying policies in *SharkNinja* and *MemoryWeb*, are *ultra vires* ................................................................................ 24

II.   *SharkNinja* and *MemoryWeb* separately violate § 553 and § 316 ............... 28

III.   The Board erroneously granted Unified's motion to seal ............................ 30

CONCLUSION ........................................................................................... 29

\*      \*      \*

This Non-Confidential Reply Brief omits specific percentages (pages 4 and 5) and certain information about Unified's communications with its members (page 15) that is subject to the Protective Order from the proceeding below. Appellant Dolby does not agree that the information at issue is truly confidential or warrants redaction.

# TABLE OF AUTHORITIES

## Cases

*A.W. v. Tuscaloosa City Sch. Bd. of Educ.*,
744 F. App'x 668 (11th Cir. 2018) ........................................................1

*Acheson Hotels, LLC v. Laufer*,
144 S. Ct. 18 (2023) ..............................................................................9

*Apple Inc. v. Vidal*,
63 F.4th 1 (Fed. Cir. 2023) ...................................................14, 15, 28

*Applications in Internet Time, LLC v. RPX Corp.*,
897 F.3d 1336 (Fed. Cir. 2018) .......................................................13, 25

*Atlanta Gas Light Co. v. Bennett Regul. Guards, Inc.*,
33 F.4th 1348 (Fed. Cir. 2022) ........................................................20, 27

*Centripetal Networks, Inc. v. Cisco Sys., Inc.*,
38 F. 4th 1025 (Fed. Cir. 2022) ...........................................................16

*Cuozzo Speed Techs., LLC v. Lee*,
579 U.S. 261 (2016)...........................................................................4, 22

*Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*,
140 S. Ct. 1891 (2020).......................................................................25, 26

*Doe v. Megless*,
654 F.3d 404 (3d Cir. 2011) ..................................................................1

*ESIP Series 2 v. Puzhen Life*,
958 F.3d 1378 (Fed. Cir. 2020) ...........................................................22

*Facebook v. Windy City*,
973 F.3d 1321 (Fed. Cir. 2020) .......................................................19, 23, 24

*Federal Election Comm'n v. Akins*,
524 U.S. 11 (1998)..............................................................................2, 7

*Harty v. West Point Realty, Inc.*,
28 F. 4th 435 (2d Cir. 2022) ...........................................................8, 10, 11

*Havens Realty Corp. v. Coleman*,

445 U.S. 363 (1982) ........................................................................9

*Hunstein v. Preferred Collection & Mgmt. Servs.*,
   48 F.4th 1236 (11th Cir. 2022) ...............................................3

*Intuitive Surgical v. Ethicon*,
   25 F. 4th 1035 (Fed. Cir. 2022) ...........................................19, 20, 23

*Laufer v. Acheson Hotels, LLC*,
   50 F. 4th 259 (1st Cir. 2022) ..............................................3, 8, 9

*Laufer v. Looper*,
   22 F. 4th 871 (10th Cir. 2022) .............................................9, 10, 11

*Laufer v. Mann Hospitality, LLC*,
   996 F.3d 269 (5th Cir. 2021) ..............................................9, 10, 11

*Laufer v. Naranda Hotels, LLC*,
   60 F. 4th 156 (4th Cir. 2023) ..............................................3, 8, 9

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
   572 U.S. 118 (2014) .......................................................17

*Maloney v. Carnahan*,
   45 F.4th 215 (D.C. Cir. 2022) .............................................3

*Manhattan General Equipment Co. v. Commissioner*,
   297 U.S. 129 (1936) .......................................................24

*Medtronic, Inc. v. Robert Bosch Healthcare Sys.*,
   839 F.3d 1382 (Fed. Cir. 2016) ...........................................20, 21, 27

*Methodist Univ. Ass'n of Women Law Students v. Wynne & Jaffe*,
   599 F.2d 707 (5th Cir. 1979) ..............................................2

*Mohasco Corp. v. Silver*,
   447 U.S. 807 (1980) .......................................................24

*Phigenix, Inc. v. ImmunoGen, Inc.*,
   845 F.3d 1168 (Fed. Cir. 2017) ...........................................5

*Public Citizen v. Department of Justice*,
   491 U.S. 440 (1989) .......................................................2, 7

*SAS Inst. Inc. v. Iancu*,
  584 U.S. 357 (2017)...............................................................passim

*SIPCO v. Emerson*,
  980 F.3d 865 (Fed. Cir. 2020) ...............................................22

*SkyHawke Techs., LLC v. Deca Int'l Corp.*,
  828 F.3d 1373 (Fed. Cir. 2016) ..............................................17

*Spokeo, Inc. v. Robins*,
  578 U.S. 330 (2016)..................................................2, 5, 8, 17

*Thryv, Inc. v. Click-to-Call Techs., LP*,
  140 S. Ct. 1367 (2020)......................................................22, 24

*TransUnion v. Ramirez*,
  141 S. Ct. 2190 (2021).......................................................passim

*Trichell v. Midland Credit Mgmt.*,
  964 F.3d 990 (11th Cir. 2020) ..................................................8

*Uniloc 2017 v. Facebook*,
  989 F.3d 1018 (Fed. Cir. 2021) .........................................19, 20, 23

*Verify Smart Corp. v. Askeladden, L.L.C.*,
  824 F. App'x 1015 (Fed. Cir. 2020) .....................................21, 22, 27

*Worlds Inc. v. Bungie, Inc.*,
  903 F.3d 1237 (Fed. Cir. 2018) .................................................27

**Statutes**

35 U.S.C. § 24 ...............................................................................12

35 U.S.C. § 312 ...................................................................passim

35 U.S.C. § 314 ...................................................................passim

35 U.S.C. § 316 ....................................................................7, 28, 29

35 U.S.C. § 318 ......................................................................6, 25

5 U.S.C. § 553 ............................................................................28

5 U.S.C. § 706 ............................................................................28

**Other Authorities**

*Atlanta Gas Light Co. v. Bennett Regul. Guards*,
  IPR2013-00453, Paper 88 (PTAB Jan. 6, 2015).................................................21

Consolidated Trial Practice Guide, Nov. 2019....................................................13, 16

*Corning Optical Commc'ns RF, LLC v. PPC Broadband, Inc.*,
  IPR2014-00440, Paper 68 (PTAB Aug. 18, 2015) ............................................21

*SharkNinja Operating LLC v. iRobot Corp.*, IPR2020-00735,
  Paper 11 (PTAB Oct. 6, 2020)...................................................................passim

*Unified Patents, LLC v. MemoryWeb, LLC*,
  IPR2021-01413, Paper 76 (May 22, 2023)...................................................passim

**Rules**

Fed. R. Civ. P. 17 .................................................................................................2

**Regulations**

37 C.F.R. § 42.51 .................................................................................................12

37 C.F.R. § 42.52 .................................................................................................12

## STATEMENT OF RELATED CASES

There are no pending cases that could affect or be affected by this appeal.

I.    **The Board's refusal to identify Unified's real parties in interest, and the Director's underlying policy, should be vacated as *ultra vires***

A.    **Dolby has standing to challenge the violation of its right to information under §312(a)(2)**

1.    **Section 312(a)(2) grants Dolby a statutory information right**

35 U.S.C. § 312(a)(2) requires that "[a] petition filed under Section 311 may be considered ***only if*** the petition identifies all real parties in interest." Section 312(a)(4) further requires that "the petition provide[ ] such ***other information*** as the Director may require by regulation," confirming that Section 312(a)(2) mandates an informational requirement. Section 312(a)(5) in turn requires that "the petitioner provide[ ] copies of any of the documents required under paragraph[ ] (2) . . . ***to the patent owner***," establishing that the informational right under § 312(a)(2) belongs at least in part to the patent owner facing an IPR.

Indeed, the Director has conceded that Section 312(a)(2) "***serves important notice functions to patent owners***." *SharkNinja Operating LLC v. iRobot Corp.*, IPR2020-00735, Paper 11 at 17 (PTAB Oct. 6, 2020) (designated precedential) (emphasis added).

The information right conferred by Section 312(a)(2) has also been long recognized at law. *A.W. v. Tuscaloosa City Sch. Bd. of Educ.*, 744 F. App'x 668, 670-71 (11th Cir. 2018) ("defendants have the right to know who their accusers are"); *Doe v. Megless*, 654 F.3d 404, 408 (3d Cir. 2011) ("defendants have a right to confront their accusers") (citing *S. Methodist Univ. Ass'n of Women Law*

*Students v. Wynne & Jaffe*, 599 F.2d 707, 713 (5th Cir. 1979)); *Magic Reimbursements LLC v. T-Mobile USA, Inc.*, No. 22-02121, 2023 U.S. Dist. LEXIS 132407, at *12 (D.N.J. July 31, 2023) ("fundamental tenets of fairness [ ] entitle T-Mobile, like any other defendant, to know who is making a claim against it."); *see also* Fed. R. Civ. P. 17(a) ("An action must be prosecuted in the name of the real party in interest.").

## 2. Violation of a statutory right to information is an established injury in fact

Under Supreme Court precedent, an agency's violation of a party's statutory right to information is a particularly well-established injury in fact. Thus, in *Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016), the Supreme Court cited two of its right to information precedents—*Akins* and *Public Citizen*—as examples of cases in which the violation of plaintiffs' statutory rights, standing alone, established an injury in fact. 578 U.S. at 342 (discussing *Federal Election Comm'n v. Akins*, 524 U.S. 11, 20-25 (1998), and *Public Citizen v. Department of Justice*, 491 U.S. 440, 449 (1989)).

In *TransUnion v. Ramirez*, 141 S. Ct. 2190, 2214 (2021), the Court further acknowledged that the violation of a right "to receive [ ] required information" constitutes a "concrete informational injury under several of this Court's precedents," even though the plaintiffs there had not alleged such an injury.

Since *TransUnion*, numerous circuit courts have confirmed that an agency's

violation of an appellant's statutory right to information constitutes an "injury in

fact." *Maloney v. Carnahan*, 45 F.4th 215, 216-18 (D.C. Cir. 2022) ("Binding

precedent from the Supreme Court and this court has long held that information

injuries give rise to standing."); *Laufer v. Acheson Hotels, LLC*, 50 F. 4th 259,

269-70 (1st Cir. 2022) ("[T]he Supreme Court has repeatedly said that denial of

information to which plaintiffs have a legal right can be a concrete injury in fact.");

*Laufer v. Naranda Hotels, LLC*, 60 F. 4th 156, 166 (4th Cir. 2023) ("With respect

to . . . injury in fact, Laufer has alleged all that she needs to: that she has failed to

obtain information which must be publicly disclosed pursuant to a statute.");

*Hunstein v. Preferred Collection & Mgmt. Servs.*, 48 F.4th 1236, 1243 n.3 (11th

Cir. 2022) ("Statutes creating a right to information are notable examples of where

Congress may, in fact, do something that looks like creating an injury.").

### 3. The Board's decision and the Director's policy violated Dolby's information right and caused it an injury in fact

The Board's decision below violated Dolby's informational right by refusing

to identify whether one or more of nine specific Unified members is a real party in

interest to the proceeding, contrary to § 312(a)(2), despite extensive evidence and

argument on the issue from Dolby.

And that was no accident. In the only proceeding in which the Board *has*

found certain Unified members to be real parties in interest, the Director intervened

3

REDACTED PURSUANT TO PROTECTIVE ORDER

and vacated the Board's determination, instead instructing the Board *not* to reach a substantive decision on the issue. *Unified Patents, LLC v. MemoryWeb, LLC*, IPR2021-01413, Paper 76 at 5 (May 22, 2023) (emphasis added) ("[t]he Board *should not have* determined whether Apple and Samsung are RPIs in this proceeding") (emphasis added).

Section 312(a)(2) was enacted to prevent such cloak and dagger IPR challenges. Since IPRs have no standing requirement, *Cuozzo Speed Techs., LLC v. Lee*, 579 U.S. 261, 279 (2016), any group of companies can fund a non-practicing LLC and use that entity to challenge the patents of a key competitor while seeking to shield themselves from the consequences of public participation in the IPR, including estoppel in future proceedings. That is exactly what has occurred here: Unified's CEO testified that the IPR below was not filed due to any infringement or royalty concerns by Unified itself; rather, it was filed as part of Unified's "strategy" on behalf of "the Video Codec Zone that we are running." Appx4719, Appx3668-3671. Unified's Video Codec Zone is a for-profit business segment that accounts for a significant share ( %) of Unified's entire revenues. Appx3573. Unified relied exclusively on its Video Codec Zone revenues to fund the IPR below. Appx4718, Appx3726. And nearly all of Unified's Video Codec Zone revenues ( %) come from the nine entities that Dolby asked the Board to identify as RPIs. Appx3573-3574.

By refusing to identify Unified's RPIs in this proceeding, the Board deprived Dolby of its informational right under § 312(a)(2), causing Dolby a well-established concrete harm that is an injury in fact. *Spokeo*, 578 U.S. at 342 (explaining that in cases involving violations of informational rights, "a plaintiff . . . need not allege any *additional* harm beyond the one Congress has identified.") (emphasis original).

### 4.     The Director's and Unified's arguments are incorrect

### a.     No affidavit required

The Director and Unified argue that Dolby has not submitted an affidavit as evidence of its injury, Green Br. 14, Red Br. 20, but no affidavit is needed: Section 312(a)(2) gives Dolby an informational right, and the Board's decision and the Director's underlying policies in *SharkNinja* and *MemoryWeb* have violated that right. Section I.A.1-3, *supra*. Dolby's standing is thus "self-evident." *Phigenix, Inc. v. ImmunoGen, Inc.*, 845 F.3d 1168, 1173 (Fed. Cir. 2017).

### b.     Prevailing on unpatentability does not deprive standing as to the Board's violation of §312(a)(2)

The Director acknowledges that Dolby has identified an "informational injury," Green Br. 14, but contends Dolby lacks standing because Dolby prevailed on the *unpatentability challenge* below. *Id.* at 14-15. Unified argues the same. Red Br. 18-19. That logic is incorrect: Dolby's success on unpatentability does not deprive it of standing to challenge the Board's distinct violation of its statutory

rights under § 312(a)(2). Thus, in *SAS Inst. Inc. v. Iancu*, 584 U.S. 357 (2017), appellant SAS had **prevailed** on unpatentability as to all but one **instituted** claim, but undisputedly had standing to appeal the Board's refusal to address **other non-instituted** claims as a violation of 35 U.S.C. § 318(a). *Id.* at 362. The Director and Unified do not and cannot reconcile their argument with *SAS Inst.*, nor do any of their cited cases, which did not involve appeals in IPR proceedings from violations of statutory rights. Green Br. 14-16, Red Br. 18-19.

### c.    Dolby is injured, not "better off," and need not wait for a future proceeding

The Director contends the Board's refusal to identify Unified's RPIs "does not injure" Dolby, Green Br. 15, but that argument simply ignores the Supreme Court's longstanding recognition of informational right violations as injuries in fact, as well as § 312. Section I.A.1-3*, supra*. The Director's and Unified's arguments as to what Dolby could do in *future* proceedings likewise ignore Dolby's rights in *this* proceeding. Green Br. at 15, Red Br. 18. Dolby has a right to know Unified's RPIs in *this* proceeding, § 312(a)(2), and thus has standing to appeal the violation of that right in *this* proceeding. For the same reason, the Director's assertion that the Board's refusal to address the RPI issue "leaves Dolby better off" is equally baseless. Green Br. 16.

**d.    Informational injury standing is not limited to "public disclosure laws," but that alleged distinction fails here**

The Director argues that Dolby could not have suffered an informational injury in this case because "[t]he AIA is not a 'public disclosure law.'" Green Br. 16 (citing *TransUnion*, 141 S. Ct. at 2214). That is legally and factually incorrect. As a legal matter, *TransUnion* did not state, much less hold, that standing for violation of a statutory right to information is limited to cases arising from "public-disclosure or sunshine laws," as the Director argues. Green Br. 16. *TransUnion* simply noted that "public-disclosure" laws were at issue in *Akins* and *Public Citizen* but not in the case before it. 141 S. Ct. at 2214. Nonetheless, as a factual matter, the AIA certainly "entitle[s] all members of the public to certain information," *TransUnion*, 141 S. Ct. at 2214, which is the requirement the Director seeks to impose. § 312(b) (requiring "public availability" of the petition, including the petitioner's identification of its real parties in interest); § 316(a) (requiring public availability of the record); § 314(c) (requiring public availability of the institution decision). The Director's attempted distinction thus fails.

**e.    Dolby need not show "downstream consequences"**

The Director's and Unified's remaining arguments all rest on the implicit premise that the violation of a statutory right to information, by itself, is not an injury in fact, and that Dolby must instead further show "downstream

consequences" or "adverse effects" from the violation, which they contend Dolby cannot do. Green Br. 16-21, Red Br. 21-24. That is wrong on all counts.

In *Spokeo*, the Supreme Court recognized that in cases involving the violation of statutory rights to information, the plaintiff "need not allege any *additional* harm beyond the one Congress has identified," *i.e.*, that the violation of the statutory right itself in such cases is sufficient "to constitute injury in fact." 578 U.S. at 342 (emphasis original).

In *TransUnion*, however, the Court stated in *dicta* that the plaintiffs there had "identified no 'downstream consequences' from failing to receive the required information," citing only to the Eleventh Circuit's decision in *Trichell v. Midland Credit Mgmt.*, 964 F.3d 990, 1004 (11th Cir. 2020), and not to any past Supreme Court precedent. *See TransUnion*, 141 S. Ct. at 2214.

Since *TransUnion*, circuit courts have split on whether "downstream consequences" are necessary to establish an injury in fact arising from a violation of a statutory right to information. *Compare Laufer v. Acheson Hotels, LLC*, 50 F.4th 259, 269-70 (1st Cir. 2022) ("the denial of information to a member of a protected class alone can suffice to make an injury in fact—that person's intended use of the information is not relevant."); *Laufer v. Naranda Hotels, LLC*, 60 F. 4th 156, 172 (4th Cir. 2023) ("a plaintiff need not show a use for the information being sought in order to establish an injury in fact"); *with Harty v. West Point Realty,*

8

*Inc.*, 28 F. 4th 435, 444 (2d Cir. 2022) (plaintiff "must also allege downstream consequences from failing to receive the required information in order to have an Article III injury in fact."); *Laufer v. Mann Hospitality, LLC*, 996 F.3d 269, 273 (5th Cir. 2021) ("Laufer still would need to allege at least that the information had some relevance to *her*.") (emphasis original); *Laufer v. Looper*, 22 F. 4th 871, 881 & n. 6 (10th Cir. 2022) (requiring "adverse effects" from violation of a statutory right to information).

The Supreme Court granted *certiorari* to resolve that dispute, but ultimately dismissed the appeal as moot because of intervening events in the proceeding below. *Acheson Hotels, LLC v. Laufer*, 144 S. Ct. 18, 20-22 (2023).

This Court should join those circuits that have held that a showing of "downstream consequences" is not necessary, because that is the only position that reconciles with the holdings of the Supreme Court's binding precedents. *See Naranda*, 60 F. 4th at 168-172 (analyzing extensively); *Acheson*, 50 F.4th at 268-274 (same).

*Havens Realty Corp. v. Coleman*, 445 U.S. 363 (1982), is particularly dispositive. There, the Court found an injury in fact based on a purely informational harm with no downstream consequences—a landlord's racially-motivated false representation of no vacancies to a plaintiff who had no intention of renting an apartment. *Havens Realty*, 445 U.S. at 373-74; *Acheson*, 50 F.4th at

9

268-69 (explaining that because the plaintiff in *Havens Realty* was a "tester," she "had no intent of ever renting an apartment from the defendant and went posing as a renter only to figure out if the defendant was violating the law."). *TransUnion* did not overturn (or even discuss) *Havens Realty*, and it remains binding Supreme Court precedent that precludes a "downstream consequences" requirement for informational injury standing.

Accordingly, the Director's and Unified's arguments regarding the alleged lack of downstream or adverse consequences from the Board's refusal to identify Unified's RPIs are irrelevant. Green Br. 16-21, Red Br. 21-24.

### f.    Dolby has suffered numerous "downstream consequences"

To the extent this Court still requires a showing of "downstream consequences," that requirement is easily met. Demonstrating "downstream consequences" merely requires a showing that the information "***had some relevance***" to the plaintiff, *Laufer v. Looper*, 22 F. 4th 871, 881 & n. 6 (10th Cir. 2022) (emphasis added); *Laufer v. Mann Hosp., LLC*, 996 F.3d 269, 273 (5th Cir. 2021) (same), or that the plaintiff had "an interest in ***using the information***." *Harty v. West Point Realty, Inc.*, 28 F. 4th 435, 444 (2d Cir. 2022) (emphasis added). The "downstream ***consequences***" need not independently establish an injury in fact apart from the violation of the statutory right to information.

The Director and Unified thus wrongly assert that the harms Dolby identified in its Opening Brief are "too speculative" to support standing. Green Br. 16-21, Red Br. 21-24. Because Dolby has already identified the violation of its informational right under § 312(a)(2) as a cognizable injury, the various additional harms *deriving* from that injury identified in Dolby's Opening Brief do not need to independently rise to the level of injuries in fact. Rather, to the extent Dolby needs to additionally show "downstream consequences" from the violation of its right to know the identity of Unified's RPIs in this proceeding, it need only show it has an interest in ***using*** that information, or the ***relevance*** of the information to it. *Looper*, 22 F. 4th at 881 & n. 6; *Mann Hosp.*, 996 F.3d at 273; *Harty*, 28 F. 4th at 444.

Here, Dolby has demonstrated that the identities of Unified's real parties in interest in this proceeding are relevant and useful to it because that information would (1) inform Dolby's future commercial and legal interactions with those entities, including for patent licensing purposes; (2) allow Dolby to investigate potential breaches of existing licensing agreements between Dolby and those entities, whether directly or indirectly; (3) allow Dolby to raise the fact of estoppel in future licensing discussions with those entities, with potentially significant monetary implications; and (4) inform Dolby's future decisions as to whether to bring an infringement suit against those entities. *See* Blue Br. 13-14. Dolby need not show more.

Nonetheless, the Board's violation of § 312(a)(2) has also caused Dolby additional downstream consequences.

*First*, the Board's refusal to identify Unified's RPIs under § 312(a)(2) in this proceeding jeopardizes Dolby's ability to enforce its estoppel rights against Unified's RPIs in a future proceeding. The relevant facts regarding the nature of United's relationships with its members are held by Unified, and have been extensively gathered and presented to the Board in this proceeding at considerable expense to Dolby. Those facts, however, are subject to protective order limitations, and would not be directly available in a future proceeding. *See* Appx5001 at ¶ 11 (requiring return and destruction of confidential information within 60 days of final disposition of this action). Moreover, obtaining that same information in a later IPR brought by one of Unified's members would require third party discovery against Unified. The procedure for third party discovery before the Board is lengthy and cumbersome—requiring both a successful motion before the Board, 37 C.F.R. §§ 42.51 & 42.52, and a subpoena from a federal district court under 35 U.S.C. § 24. Given the short timelines of IPR proceedings, those requirements make third party discovery effectively impractical. And deferring the RPI determination to a future proceeding further creates the risk of spoliation of evidence: Unified may not retain the relevant information; indeed, Unified may not

exist at all at such a future date. At the same time, Dolby would be required to incur significant additional and unwarranted expense.

The Board's Trial Practice Guide states that a "core function[ ] of the 'real party-in-interest' . . . requirement" is "to assure proper application of the statutory estoppel provisions." Consolidated Trial Practice Guide, Nov. 2019, 12 D.1. This Court reached the same conclusion in *Applications in Internet Time, LLC v. RPX Corp.*, 897 F.3d 1336, 1348-50 (Fed. Cir. 2018). The Board's refusal to identify Unified's RPIs in *this* proceeding violates that "core function" for the reasons above.

*Second*, the Board's refusal to identify the RPIs to this proceeding deprives Dolby of an important deterrence benefit against future Unified IPRs as to *other* Dolby patents. Contrary to the Director and Unified's arguments, Green Br. 19-20, Red Br. 23, that harm is not too speculative to constitute an adverse or downstream consequence from the violation of Dolby's information right. In addition to the IPR below, Unified has brought two other IPR challenges to patents owned by Dolby or in which Dolby holds an interest. *See* IPR2022-01508, IPR2021-00827, Paper 4 (identifying Dolby as a real party in interest). Unified's CEO has also testified that Unified considers the identity of the patent owner in selecting the IPRs it brings. Appx4767. Unified has thus demonstrated a deliberate, repeated, and continuing interest in filing IPRs against Dolby. Indeed, the very design of Unified's Video

13

Codec Zone pits Unified against operating companies like Dolby that hold key patents in that space but do not pay Unified for membership. Appx3575, Appx4768, Appx5202, Appx6362. The risk of future Unified IPRs against Dolby is further amplified by the *size and significance* of Dolby's patent portfolio in the video encoding space, as Unified's own internal documents have recognized. Appx4293. Dolby thus faces a very real risk of further IPRs from Unified. *Apple Inc. v. Vidal*, 63 F.4th 1, 17 (Fed. Cir. 2023) (the fact of frequent past infringement suits against Apple and Apple's demonstrated past use of IPRs made it "far from speculative that this sequence will be repeated in the future").

A finding that one or more of Unified's high-paying members is a real party in interest in this proceeding, however, would deter Unified from bringing future IPRs against Dolby. That too is not speculation; it is backed by evidence. Unified's CEO has testified that its members [redacted information regarding Unified's relationships with members]. Appx3572. If one or more of Unified's members were found to be RPIs in this proceeding, Unified would reasonably seek its members' consent to be named as RPIs in future proceedings. After all, Unified's members are, according to its CEO, Unified's "customers" to whom it provides "a service." Appx6358. But Unified's CEO has admitted that it cannot count on its members' consent to be bound as RPIs to its proceedings, and that having to bind

14

its members as RPIs would be a "dramatic departure" from its practices to date. Appx4765, Appx3662.

Thus, finding one or more of Unified's members to be RPIs in this proceeding would create a significant impediment to Unified filing future IPRs, particularly against a party like Dolby that has demonstrated its commitment to enforcing its rights under Section 312(a)(2). That is precisely why Unified has vigorously fought the issue in not only this proceeding, but in dozens of other proceedings. *See* https://www.unifiedpatents.com/insights/2021/12/8/unified-patents-incs-real-party-in-interest-and-discretionary-decisions. And that is why, in the more than 225 IPRs it has filed, Unified has ***never*** named a single member as a real party in interest. Appx4765, Appx3664, Appx3659. Indeed, Unified's CEO testified that Unified's business model necessarily rests on it being named as the sole RPI to its IPR challenges. Appx4765, Appx3660.

By refusing to determine whether one or more of the nine entities at issue are RPIs to this proceeding, the Board and the Director have deprived Dolby of a significant downstream impediment to future IPRs from Unified. That is both a "downstream consequence" and an "injury in fact." *Apple Inc. v. Vidal*, 63 at 17 (increased risk of hypothetical IPR denials was an injury in fact "even though Apple cannot specify in advance individual IPR[s]" it would file).

*Third*, the Board's refusal to identify Unified's real parties in interest deprived Dolby of the assurance that the panel assigned to the proceeding below was free of conflicts with respect to the nine entities at issue. The Board's Trial Practice Guide has recognized that "identifying potential conflicts" is another of the "core functions" of the real party in interest requirement. Consolidated Trial Practice Guide, Nov. 2019, 12 D.1. Once again, that "core function" was not met here—the Board made no determination that the assigned judges did not have conflicts with the nine RPIs at issue.

Contrary to Unified and the Director's arguments, the violation of Dolby's right to a conflict-free panel is not moot because Dolby succeeded on the merits of the invalidity challenge below. Green Br. 20-21, Red Br. 24. This Court's decision in *Centripetal Networks, Inc. v. Cisco Sys., Inc.*, 38 F. 4th 1025 (Fed. Cir. 2022), is instructive. There, although the district court judge's indirect and minor interest in Cisco's stock could only have benefitted him from ruling in *favor* of Cisco, and although he ruled *against* Cisco, this Court nonetheless vacated the decision below because the judge's ruling was "rendered while he had a known financial interest in one of the parties." *Id.* at 1039. As in *Centripetal*, Dolby's right to a conflict-free panel below is an enduring procedural right, and does not turn on the outcome of the Board's substantive decision on the merits. Moreover, it is a right that extends to potential conflicts vis a vis a petitioner's *real parties in interest*, which was

violated due to the Board's refusal to identify Unified's RPIs at all. Nor was Dolby

obligated to initiate its own conflict check, as the Director contends. Green Br. 20-

21.

### 5.    Dolby's injuries are traceable and redressable

Neither Unified nor the Director disputes that Dolby's injuries are traceable

to the Board's decision and Director's policy, and would be redressed by a

favorable decision instructing the Board to identify Unified's RPIs. *See Spokeo*,

578 U.S. at 338.

Dolby thus has standing to challenge the Board's refusal to identify

Unified's real parties in interest, as well as the Director's policy precluding the

Board from doing so.

### 6.    Unified's "prudential" arguments are wrong

Unified contends Dolby must additionally show "prudential standing," and

argues it is lacking here, citing *SkyHawke Techs., LLC v. Deca Int'l Corp*., 828

F.3d 1373, 1375 (Fed. Cir. 2016). Red Br. 18-19. Unified is wrong. *SkyHawke*

acknowledged there is no "jurisdictional" rule against hearing appeals from

"prevailing parties," and that this Court is not "required" to refuse such appeals. *Id.*

at 1378. The Supreme Court has also explained that refusing appeals on prudential

grounds is "in some tension" with federal appellate courts' "virtually unflagging"

obligation to "hear and decided cases within [their] jurisdiction." *Lexmark Int'l,*

*Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 125-26 (2014). *SAS Inst. v. Iancu*, makes clear that a prevailing party to an *inter partes* review may pursue an appeal arising from the Board's violation of its statutory rights. 584 U.S. at 362. Moreover, unlike in *SkyHawke*, Dolby is dissatisfied with the Board's ***judgment*** as to Section 312(a)(2), not simply the Board's ***explanation*** of that judgment. 828 F.3d at 1377. And Dolby is pursuing its own rights, not those of others, which Congress granted to it under §§ 312(a) and 319. This Court should not refuse this appeal on prudential grounds.

### B.   This Court has jurisdiction notwithstanding § 314(d)

The Director and Unified extensively argue that § 314(d) bars this Court's jurisdiction over the Board's violation of § 312(a)(2). Green Br. 23-30, Red Br. 25-29. Those arguments largely rest on the premise that Dolby's appeal "is little more than a challenge to" the Director's ***decision to institute*** the proceeding below. Green Br. 25, Red Br. 25.

The Board's decision below, however, entirely refutes the Director's and Unified's foundational premise. The Board's final written decision stated the Board did not determine the identity of Unified's RPIs ***because*** "neither issues of time bar nor issues of estoppel are implicated" by that information in this proceeding. Appx5. In other words, the Board's reason for refusing to identify Unified's RPIs was that the information *would not affect institution or require*

*termination* of the proceeding. Appx3-5. The Board further relied upon *SharkNinja* for that same reason. *Id.* (citing *SharkNinja Operating LLC v. iRobot Corp.*, IPR2020-00735, Paper 11 at 18 (PTAB Oct. 6, 2020) (precedential) (holding that Board need not address challenges to a petitioner's RPI identification where the allegedly omitted RPIs ***would not affect institution***)). The Director's subsequent decision in *MemoryWeb* likewise instructed that the Board should not determine the identity of a petitioner's RPIs where that information is "not necessary to ***resolve*** th[e] proceeding" at issue, *i.e.*, where it does not affect institution or require termination. *Memoryweb*, IPR2021-01413, Paper 76 at 5 (emphasis added).

The Director's and Unified's argument that this appeal is directed to the Board's decision to institute is thus entirely false. Rather, this appeal is directed to the Board's ***post-institution conduct*** of the proceeding, which the Director admits this Court ***can review*** under the Supreme Court's precedent in *SAS Inst. v. Iancu*, 138 S. Ct. 1348 (2018), as well as this Court's precedents in *Facebook v. Windy City*, 973 F.3d 1321, 1332 (Fed. Cir. 2020), *Uniloc 2017 v. Facebook*, 989 F.3d 1018 (Fed. Cir. 2021), and *Intuitive Surgical v. Ethicon*, 25 F. 4th 1035 (Fed. Cir. 2022). Green Br. 29-30.

The Director nonetheless argues that jurisdiction is lacking, and that *SAS*, *Windy City*, *Uniloc 2017*, and *Intuitive Surgical* are all distinguished, because § 312(a)(2) allegedly "governs ***only*** the Director's institution decision," Green Br.

25 (emphasis added), and "limits only the agency's authority to ***institute*** review, not its conduct of the resulting proceeding." Green Br. 27 (emphasis added); Green Br. 28 ("§ 312(a)(2) directly governs institution ***and nothing else***") (emphasis added). Unified makes essentially the same argument, contending that "the Board has no statutory reason to consider real parties-in-interest beyond the requirements of § 312(a)(2) ***related to institution***." Red Br. 27 (emphasis added).

Crucially, however, the Director ***admits*** that if a statutory provision can affect the Board's ability to ***maintain*** an instituted proceeding, that statutory provision does not merely affect the Board's ability to ***institute***, and that this Court has jurisdiction to review the Board's violation of such a statute. Green Br. 29-30 (quoting and discussing *Uniloc 2017*, 989 F. 3d at 1027, and *Intuitive Surgical*, 25 F. 4th at 1040).

The Director's admission is fatal to the Director's and Unified's argument because the Board has ***repeatedly*** applied § 312(a)(2), ***post-institution***, to terminate IPR proceedings. *See, e.g., Atlanta Gas Light Co. v. Bennett Regul. Guards, Inc.*, 33 F.4th 1348, 1350 (Fed. Cir. 2022); *Medtronic, Inc. v. Robert Bosch Healthcare Sys.*, 839 F.3d 1382, 1383-84 (Fed. Cir. 2016).

Thus, in *Atlanta Gas Light*, the parties had litigated the proceeding not only beyond institution, but all the way to an oral hearing, "awaiting only the final written decision from the Board." 33 F. 4th at 1350. "Before a final written

20

decision was issued, however, the Board vacated its institution decision and

***terminated*** the IPR because Atlanta Gas failed to list all real parties-in-interest

(RPIs) in its petition, ***as required by 35 U.S.C. § 312(a)(2)***." *Id.* (emphasis added).

In particular, the Board's decision stated that because the petitioner had omitted to

identify one of its RPIs, the petition was "incomplete and, pursuant to 35 U.S.C. §

312(a)(2), may not be considered." *Atlanta Gas Light Co. v. Bennett Regul.*

*Guards*, IPR2013-00453, Paper 88 at 19 (PTAB Jan. 6, 2015).

And in *Medtronic*, the Board likewise terminated the IPR ***post-institution***

"because of Medtronic's failure to comply with the requirement that all real parties

in interest be disclosed." 839 F.3d at 1383-8; *see also, e.g., Corning Optical*

*Commc'ns RF, LLC v. PPC Broadband, Inc.*, IPR2014-00440, Paper 68 (PTAB

Aug. 18, 2015) (Board terminating IPR post-institution because of the petitioner's

failure to list all real parties in interest).

Moreover, the Board has also repeatedly required petitioners to ***update*** their

RPI identification ***post-institution*** to name RPIs that were improperly omitted in

the petition, even where the additional RPIs would ***not affect institution or require***

***termination***. *See, e.g., Verify Smart Corp. v. Askeladden, L.L.C.*, 824 F. App'x

1015, 1018 (Fed. Cir. 2020) (noting that the Board required petitioner to name

TCH as its RPI ***post-institution*** and to update its mandatory notice accordingly, but

declined to terminate the proceeding). Thus, contrary to the Director's arguments,

21

§ 312(a)(2) does **not** only govern the Director's institution decision, and **does** also govern the agency's "conduct of the resulting proceeding." Green Br. 29, 25, 27.

For the same reason, this appeal is not barred by *ESIP Series 2 v. Puzhen Life*, 958 F.3d 1378, 1386 (Fed. Cir. 2020), or *SIPCO v. Emerson*, 980 F.3d 865, 869 (Fed. Cir. 2020). *See* Blue Br. 10-12. As the Director itself argues, those appeals challenged the Board's **decision to institute**, Green Br. 24, whereas this appeal does not. Blue Br. 11-12. Unified's citation to *Askeladden*, Red Br. 25, fails on the same basis: that appeal too involved a challenge to the Board's decision to institute, 824 F. App'x. at 1024, which is entirely distinct from this appeal.[*]

The Supreme Court's decisions in *Thryv, Inc. v. Click-to-Call Techs., LP*, 140 S. Ct. 1367 (2020), and *Cuozzo Speed Techs. LLC v. Lee*, 579 U.S. 261 (2016), are equally inapposite. In *Thryv*, the Court held that "[b]ecause § 315(b)'s **sole office is to govern institution**, Click-to-Call's contention remains, essentially, that the agency should have refused to institute inter partes review." 140 S. Ct. at 1377 (emphasis added). And in *Cuozzo*, the appeal was "little more than a challenge to the Patent Office's . . . . determination to institute[.]" 579 U.S. at 276. As demonstrated, however, the impact of § 312(a)(2) extends beyond institution, and

---

[*] In all three cases, appellants' factual challenges to the Board's substantive RPI determinations were challenges to the decision to institute, and were barred on appeal for that reason. By contrast, § 314(d) would not bar a future appeal from the Board's erroneous RPI determination in this proceeding.

this appeal is not directed to the Board's decision to institute. Neither *Thryv* nor

*Cuozzo* applies here. *Cf.* Green Br. 24-27, Red Br. 25-29.

This appeal is thus not barred by § 314(d) under the Director's own

reasoning. Green Br. 29-30 (admitting that this Court has jurisdiction to review the

Board's post-institution violations of AIA statutes that "constitute[ ] a post-

institution obligation"). Rather, it falls within the holdings of *SAS Inst.*, 138 S. Ct.

at 1360, *Windy City*, 973 F.3d at 1330-1332, *Uniloc 2017*, 989 F.3d at 1027, and

*Intuitive Surgical*, 25 F. 4th at 1040, each of which confirms this Court's

jurisdiction. Blue Br. 7-10; *see also* Green Br. 29-30.

### C.    The Board's refusal to identify Unified's RPIs, and the Director's underlying policies in *SharkNinja* and *MemoryWeb*, are *ultra vires*

Section 312(a)(2) states that "[a] petition may be considered ***only if*** . . . the

petition identifies ***all*** real parties in interest." (emphasis added). Section 312(a)(2)

thus imposes a non-discretionary duty upon the Director and the Board to ensure

that a petition accurately identifies *all* real parties in interest. *See* Blue Br. 15-22

(discussing *Jennings*, 138 S. Ct. at 837-38, 846-47; *Overton Park*, 401 U.S. at 405,

411; *Hodari D.*, 499 U.S. at 627-628; *Regan*, 996 F.3d at 700; *Amador County*,

640 F.3d at 395).

Notably, neither the Board's decision below, nor *SharkNinja*, nor

*MemoryWeb* offered any substantive interpretation of the language of § 312(a)(2).

Rather, each only relied on the purported "interest in cost and efficiency" to ignore

23

the plain text of § 312(a)(2). Appx4-5 (citing *SharkNinja*, IPR2020-00734, Paper 11 at 20; *MemoryWeb*, IPR2021-01413, Paper 76 at 4.

But an agency's approach toward enforcement of a statute "cannot supersede the language chosen by Congress." *Mohasco Corp. v. Silver*, 447 U.S. 807, 825 (1980). "[T]he fact that a given law or procedure is efficient, convenient, and useful in facilitating functions of government, standing alone, will not save it if it is contrary to the Constitution." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2207 (2021). An agency policy that "create[s] a rule out of harmony with the statute[ ] is a mere nullity." *Manhattan General Equipment Co. v. Commissioner*, 297 U.S. 129 (1936). "[N]o matter how valid, policy considerations cannot create an ambiguity when the words on the page are clear." *Windy City*, 973 F.3d at 1338.

The Supreme Court's decision in *SAS Institute* is especially instructive. Although the Director's partial-institution approach would have certainly been more "efficient," the Supreme Court resoundingly rejected the Director's preference in view of Congress's contrary statutory mandate. 548 U.S. at 368 (rejecting Director's "policy argument" that "partial institution is efficient"). Unified's reliance on *Thryv* does not demonstrate otherwise. Red Br. 30-31.

The Director's and Unified's cost and efficiency-based arguments, including as to the "sensibility" of Congress's statute, are thus foreclosed by the plain statutory text. *Cf.* Green Br. 30-35, Red Br. 29-33.

Moreover, identifying Unified's RPIs on the record below would not have been either costly or inefficient. Dolby had already obtained and presented extensive evidence on the matter, and both parties had fully briefed the issue. And as noted earlier, the relevant facts are best gathered and presented in this proceeding, where Unified is a party, rather than in a future proceeding involving one of Unified's members, where the existing protective order and the need for third party discovery would effectively render the information inaccessible, and where spoliation of evidence may arise.

Pivoting away from § 312, the Director argues that § 318(a) governs final written decisions, and since § 318(a) does not expressly require identifying real parties in interest, the Board's final decision was not required to address the issue. Green Br. 31. That argument is an impermissible *post hoc* rationalization presented for the first time on appeal, and cannot support affirmance under binding Supreme Court precedent. *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 140 S. Ct. 1891, 1908-10 (2020) ("The basic rule here is clear: An agency must defend its actions based on the reasons it gave when it acted.").

The Director's new rationale is also wrong. The text of § 318(a) does not *limit* the scope of issues that the Board must address in its decision. "The Board is required to address the issues that the parties raise during the proceeding, and it lacks authority to substitute its choice of issues over that of the parties'."

*Applications in Internet Time, LLC v. RPX Corp.*, 897 F.3d 1336, 1365 (Fed. Cir. 2018) (Reyna, J., concurring). Inter partes review is a "party-directed, adversarial process," not an "agency-led, inquisitorial process." *SAS Inst.*, 138 S. Ct. at 1355.

The Director's argument that "the *SharkNinja* rule preserves the ability of putative real-parties-in-interest to litigate their . . . status in their own cases," Green Br. 33 (citing *MemoryWeb*, IPR2021-01413, Paper 76 at 5), is yet another impermissible *post hoc* rationalization. *Dep't of Homeland Sec.*, 140 S. Ct. at 1908-10. The Director's opinion in *MemoryWeb* did not adopt such a rationale; it only acknowledged that petitioner had raised that argument. Moreover, like the Director's "efficiency" justification, the Director's "prejudice" concern cannot justify violating the plain text of § 312(a)(2).

The Director next contends that § 312(a)(2) "***implicates no statutory duty at all***," Green Br. 31 (emphasis added), or else ***only*** applies at the institution decision stage and ***only if*** issues of estoppel or time bar are implicated. Green Br. 32-33, Red Br. 30-33. But the plain statutory text states otherwise, forbidding the Director from considering a petition unless the petition identifies "***all*** real parties in interest." § 312(a)(2). The statute thus expressly imposes a duty upon the Director, and does not limit that duty to situations implicating time bar or estoppel. Moreover, the Board has repeatedly recognized that § 312(a)(2) imposes an ***ongoing obligation*** upon the Board to ensure that a petitioner's RPI identification

is and remains accurate and complete throughout the proceeding, regardless of time bar or estoppel implications. *Atlanta Gas Light*, 33 F.4th at 1350 (IPR terminated post-institution); *Medtronic*, 839 F.3d at 1383-84 (same); *Corning Optical*, IPR2014-00440, Paper 68 (PTAB Aug. 18, 2015) (same); *Askeladden*, 824 F. App'x at 1018 (requiring petitioner to name TCH as RPI post-institution). Thus, the Board itself has recognized that § 312(a)(2) does impose a statutory duty upon the Director, which is not limited to issues of time bar or estoppel.

Ignoring the statutory text once more, the Director boldly contends that "[n]othing in the statute provides that the Board must independently verify [a petitioner's RPI] representation before it may consider the petition." Green Br. 32. But again, that is precisely what § 312(a)(2) says: the Director shall not consider a petition unless it identifies all RPIs. And when a patent owner has put forth extensive evidence that particular third parties should be named as RPIs, the Director must address and resolve the dispute. *Worlds Inc. v. Bungie, Inc.*, 903 F.3d 1237, 1245-46 (Fed. Cir. 2018).

In sum, the Director's broad nonenforcement policy as to § 312(a)(2) is contrary to Congress's mandate and is *ultra vires*. This Court should reverse, vacate, and remand instructing the Board to consider the extensive evidence that one or more of the nine entities at issue are RPIs to this proceeding, Appx3639-

4492 (exhibits), Appx5191-5211 (Patent Owner's Response), Appx5859-5868

(Sur-Reply), and to issue a determination on the issue.

## II.  *SharkNinja* and *MemoryWeb* separately violate § 553 and § 316

This Court should vacate and remand the Board's refusal to identify

Unified's RPIs for the independent reason that it relied on rules issued in violation

of 5 U.S.C. § 553 and 35 U.S.C. § 316.

Dolby has standing. *SharkNinja* and *MemoryWeb* deprive Dolby of its right

to information under § 312(a)(2) in this proceeding—an injury in fact. Section

I.A.1-4. And the harm is traceable and redressable: striking down those decisions

would require the Board to reconsider its refusal to identify Unified's RPIs. *Apple

v. Vidal*, 63 F. 4th at 16. This Court also has jurisdiction. *Id.* at 14-15.

The Director concedes "that agencies must use notice-and-comment

rulemaking to implement 'substantive' rules," and that a "substantive rule" is one

that "affects individual rights and obligations." Green Br. 36.

*SharkNinja* and *MemoryWeb* deprive Dolby of its statutory right to

information under § 312(a)(2)—the right to know the RPIs in this proceeding—

with downstream consequences. Section I.A.1-4, *supra*. Indeed, the Director issued

*MemoryWeb* to deprive a patent owner of the Board's finding that two Unified

members were unnamed RPIs. IPR2021-01413, Paper 76 at 5. *SharkNinja* and

*MemoryWeb* thus affect individual rights, and are substantive rules that required

notice-and-comment rulemaking. Green Br. 36, Blue Br. 24-28. Accordingly, this Court should hold those rules invalid under 5 U.S.C. § 706(2) and § 553.

Moreover, § 316(a)(4) precludes the Director from issuing standards governing inter partes review through any mechanism other than "regulations," which *SharkNinja* and *MemoryWeb* are not. *See* Blue Br. 24-25, 27 (gathering cites). This Court should additionally invalidate the rules of those decisions as violations of § 316.

## III. The Board erroneously granted Unified's motion to seal

The Board's decision to seal rested on its erroneous refusal to determine Unified's RPIs, Appx35, and lacked any finding that the sealed information was "truly confidential" or that "a concrete harm would result upon public disclosure." *See* Appx34-35; Blue Br. 29-30 (summarizing standards). Nor did Unified show good cause for each request. Appx5093-5112.

Notably, the sealed information includes the ***names*** of the nine entities at issue, and the identity of the Unified member that asked Unified about its IPR activity against Dolby. That information is neither "truly confidential" nor would its disclosure entail a "concrete harm."

### CONCLUSION

For the reasons above, this Court should reverse and vacate the Board's refusal to address the RPI issue on the merits, and its granting of the motion to seal

29

except as to Unified's financial information, and remand with instructions for the

Board to substantively address the RPI dispute consistent with § 312(a)(2).


Respectfully submitted,

*/s/ Kayvan B. Noroozi*
Kayvan B. Noroozi
Noroozi PC
11601 Wilshire Blvd., Suite 2170
Los Angeles, CA 90025
(310) 975-7074
kayvan@noroozipc.com

Richard A. Epstein
16 Thomas Place
Norwalk, CT 06853
773.450.4476
raepstein43@gmail.com

*Counsel for Appellant*

## <u>CERTIFICATE OF COMPLIANCE</u>

This brief complies with the type-volume limitations of Federal Rule of Appellate Procedure 32(f) and the Rules of this Court, because it contains 6,865 words (as determined by the Microsoft Word for Mac 2020 word-processing system used to prepare the brief), excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f). This brief also complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) and the Rules of this Court because it has been prepared in a proportionally spaced typeface using the Microsoft Word for Mac 2020 word-processing system in 14-point Roman font.

This brief further complies with this Court's Rule 25.1 because it contains 14 unique words (including numbers) sought to be marked confidential.

*/s/ Kayvan Noroozi*